JESSE OWEN *v.* DR. W. P. WATSON.*

AND

JESSE OWEN *v.* THE DYERSBURG GENERAL HOSPITAL.

(*Jackson.*   April Term, 1928.)

Opinion filed July 16, 1928.

1. PARENT AND CHILD. LIABILITY OF FATHER FOR NECES-
SARIES.

The natural father is primarily liable for the support of his infant
child where either the father or mother has been decreed a divorce
but the custody of the child awarded to the mother. (Post, p. 355.)

Citing: Evans v. Evans, 125 Tenn., 112; Graham v. Graham, 140
Tenn., 328.

2. PARENT AND CHILD. FAILURE OF FATHER TO SUP-
PORT CHILD A MISDEMEANOR.

Under our law it is a misdemeanor for a father to fail to care for
or support his child under sixteen years old.   (Post, p. 355.)

Citing: Shannon's Code, sec. 6888a1B; Poindexter v. State, 137
Tenn., 386.

3. PARENT AND CHILD. DUTY OF FATHER TO SUPPLY
NECESSARIES. MEDICAL ATTENTION NECESSARY. IM-
PLIED LIABILITY.

Where the mother of a child obtained a divorce from the father
of her child, the custody of the child was awarded to her, she
afterwards remarried and the child made its home with the
mother and stepfather, the father having no association with the
child, the father is liable for the support of the child, including
medical and surgical bills which are classed as necessaries on
the theory that if the father leaves his children destitute, he
confers on anyone who finds them in that condition an agency
to supply them with necessaries.   (Post, p. 355.)

Citing: 20 R. C. L., 264, 625, 626.

4. **PARENT AND CHILD. LIABILITY OF FATHER FOR SUPPORT TO DIVORCED MOTHER.**

Where the mother of a child of her divorced husband has furnished necessaries for the child, she can recover for them from her divorced husband. In that respect she occupies no different position from that of any other person who furnishes necessaries under similar circumstances. (Post, p. 356.)

---

*Headnotes 1. Parent and Child, 29 Cyc., p. 1607; 2. Parent and Child, 29 Cyc., p. 1611; 3. Parent and Child, 29 Cyc., p. 1608; 4. ———; 5. ———; 6. Divorce, 19 C. J., section 814.

---

## FROM DYER.

---

Appeal from the Circuit Court of Dyer County.—HON. R. A. ELKINS, Judge.

W. S. WILLIAMS and BERT HODGE, for plaintiffs in error.

W. S. COOVER, for defendant in error.

MR. JUSTICE McKINNEY, delivered the opinion of the Court.

These cases were consolidated and heard together.

In the first case judgment was rendered in the circuit court in favor of Watson and against Jesse Owen for $150 for an appendicitis operation on Earl D. Owen, the fourteen and a half-year old son of Jesse Owen.

In the second case judgment was awarded the Hospital against Owen for $84.30 for services incident to said operation.

In the Court of Appeals the judgments were reversed and the suits dismissed.

On February 21, 1911, the mother of Earl obtained a divorce from his father on the grounds of cruel and

inhuman treatment.  The custody of Earl was decreed to his mother with leave to his father to see him at reasonable times and places.  No provision was made in the decree for the support of Earl.

Some two to four years later Mrs. Owen married Clay Horner, and Earl became and continued a member of the Horner family to the time of the bringing of these suits. He was supported by Horner, worked for him and received the same treatment as his other children.  Neither Mr. nor Mrs. Horner ever called on Owen to contribute anything to the support of Earl, and no contribution was made by him.  While the parties resided in the same locality, they had no associations together, and Mrs. Horner and Owen cherished a feeling of hostility toward each other.  Owen never sought the society of his son, and Earl never called at the Owen home.

The record indicates that Horner owns no property and is a very poor man.  On the other hand, Owen is a man of some means.

On October 23, 1924, Earl was taken ill.  Dr. Wynn was sent for and advised that he be taken to Dyersburg at once and operated on for appendicitis.  Thereupon J. A. Shaw, father of Mrs. Horner and grandfather of Earl, called upon Owen and acquainted him with the condition of his son, and requested that he go and see him, which he declined to do.  He thereupon suggested that Horner was a poor man and not able to bear the expense of an operation, and that he (Owen) assume the expense, or a part of the expense, of the operation, which he declined to do, saying that if Horner was not able to bear the expense that he could take him to a charity hospital.  Thereupon Earl was taken to the hospital by Dr. Wynn, Mr. and Mrs. Horner and operated upon. It seems to have been an emergency case and no agree-

ment was had about the matter. Dr. Watson assumed that Earl was the son of Mr. and Mrs. Horner, and entered a charge against Horner, but being advised later that he was a son of Owen he also charged the account to the latter. Owen took the position that he was neither legally nor morally bound for the payment of these accounts and refused to pay them, whereupon these suits were instituted before a justice of the peace, who rendered judgment against Owen, and he appealed to the circuit court.

*(1)* The rule is well settled in this State that the natural father is primarily liable for the support of his infant child where the court has decreed his custody to his mother. *Evans v. Evans,* 125 Tenn., 112.

This is so even where the father was decreed a divorce but the custody of the child was awarded to the mother. *Graham v. Graham,* 140 Tenn., 328.

*(2)* Section 6888a18 of Shannon's Code make it a misdemeanor for a father to fail to care for or support his child under sixteen years of age. See also *Poindexter v. State,* 137 Tenn., 386.

*(3)* Medical and surgical bills are classed as necessaries. 20 R. C. L., 625-626.

Here the father was called on to furnish medical care for his son and declined to do so.

Under the title "Implied Authority to Procure or Supply Necessaries" in 20 R. C. L., 624, it is said:

"The civil remedy is more commonly worked out by holding that, if the father leaves his children destitute, he confers on anyone who finds them in that condition an agency to supply them with necessaries; the volunteer can therefore recover the cost of the supplies from the father in a civil action."

The foregoing principles being well sustained, and our own decisions holding that the furnishing of necessaries is a primary obligation of the natural father, we see no basis for relieving plaintiff in error of this obligation simply because another, so far as his means would permit, has voluntarily contributed to the support of his son. Where one makes a contribution to another's obligation it does not necessarily discharge the obligor from further performance.

(4) Counsel conceded in the Court of Appeals that, under the decisions of this court, if Mrs. Horner had paid these accounts she could have recovered from Owen the sums so paid. The basis of such recovery would necessarily have been that she furnished necessaries to the infant which the father was primarily obligated to furnish, but failed to do. In that respect, under the authorities, she occupies no different position from that of any other person who furnishes necessaries under similar circumstances.

The general rule may be thus stated: Where, as here, the father is primarily obligated to furnish his infant child with necessaries, such as medical care, and refuses to do so, anyone providing such necessaries may recover therefor from the father upon an implied authority of agency.

Here the father was not entitled to the custody of the child, and, in fact, had not sought his custody and control. He refused to furnish him necessary medical care, which was furnished by Dr. Watson and the Hospital. Dr. Watson testified as follows:

"On October 23, 1924, Earl D. Owen was brought to me at the Dyersburg General Hospital in the town of Dyersburg, with which I am connected, for a profession-

al attention. He was suffering from an acute attack of appendicitis, and I considered that immediate operation was necessary to save his life. I did thereupon perform upon him an appendectomy, and found that his situation was very serious, and that his appendix was gangrenous; and that I was correct in my diagnosis that such an operation was necessary.

"The said Earl D. Owen remained in the Dyersburg General Hospital for several days, during which time I attended him and gave him medical treatment and attention.

"It is for these services that I have sued the defendant, Jesse Owen, for one hundred and fifty dollars ($150). That amount is a reasonable and usual charge for such services by surgeons and physicians. No part of this account has been paid to me, and the whole of the same is due and justly owing."

Cross-examination:

"On cross-examination the witness stated that the said Earl D. Owen was a young boy at that time, apparently 15 or 16 years of age; that he was accompanied to the hospital by his mother, Mrs. Clay Horner and his stepfather Clay Horner. The witness assumed at that time that the said patient, Earl D. Owen, was the son of Clay Horner, as witness was not previously acquainted with either the said Earl D. Owen, or his parents or the said Clay Horner or the defendant Jesse Owen. He had no conversation before the operation with either the patient's mother, Mrs. Clay Horner, or the stepfather, Clay Horner, and had no understanding with them or with either of them about what his charge would be for his services.

"The account, which was entered either that day or the next day on his ledger, was first charged to the said Clay Horner on the assumption that the patient was the son of said Horner. This entry was made by the plaintiff's bookkeeper.

"Sometime before the said Earl D. Owen was discharged from the hospital the plaintiff learned that the defendant, Jesse Owen, was his natural father, and he himself then added the name of Jesse Owen on his ledger so as to make the account appear on his ledger as charged jointly to Jesse Owen and Clay Horner. He learned that Jesse Owen was the father of said Earl D. Owen in a conversation with Clay Horner in the hospital. It was witness's recollection that this conversation with Clay Horner occurred on the day after the operation, but he may be mistaken about that, and it may have occurred as much as a week later."

In our opinion, these are primary obligations of Owen.

We find it unnecessary to decide whether Horner is also liable for these accounts since he was not sued.

For the reasons stated, the judgment of the Court of Appeals will be reversed and those of the circuit court affirmed.