W. C. CARTINHOUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KATHLEEN GAGER CARTINHOUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 417, 418, 112706, 112707. Promulgated March 20, 1944.

*Albert W. Taber, Esq.*, and *Charles L. Claunch, Esq.*, for the petitioners.

*Frank M. Thompson, Jr., Esq.*, for the respondent.

486

OPINION.

MELLOTT, *Judge*: Respondent's first contention is that Cartinhour is taxable upon the income of the trust under the provisions of section 22 (a) of the Internal Revenue Code for the reason that when his wife transferred the 660 shares of insurance company stock to him and the bank, as trustees, under the trust agreement of August 15, 1935, she, in effect, thereby made a gift of such shares to him individually, thus constituting him, in substance, the owner thereof. He cites and relies upon *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; certiorari denied, 320 U. S. 784; *H. S. Richardson*, 42 B. T. A. 830; affd., 121 Fed. (2d) 1; certiorari denied, 314 U. S. 684; and *Ella E. Russell*, 45 B. T. A. 397.

In the *Jergens* case, *supra*, the taxpayer's wife transferred to him and a bank, as co-trustees, certain shares of stock previously given to her by the taxpayer and two insurance policies on his life, which she had purchased. The trust instrument provided that the income from the stock should be used to pay the expenses of the trust, the premiums on the insurance policies, and an annuity of $1,700 to a third person. The balance was to be paid to the settlor during her life. The trust was for the life of the settlor, unless earlier revoked. The trustees were given unlimited power to hold, manage, and control the trust properties, except that the bank was required to abide by all written instructions respecting the trust property given to it by the taxpayer, who alone had the further power to vote the stock and to appoint investment counsel for the guidance of the trustees. The taxpayer alone had power to withdraw all or any part of the corpus of the trust, except that this power was limited with respect to the insurance in that the consent of the trustor was a prerequisite to withdrawal. He also had power to alter, amend, or modify the trust as he saw fit, or to revoke it, in whole or in part, with the single exception that he did not have power to make the proceeds of the insurance payable to his estate. The Circuit Court of Appeals for the Fifth Circuit affirmed the holding of the Board that

the petitioner (the husband) was taxable with the income of the trust under the provisions of section 22 (a).

In the *Richardson* case, the taxpayer's wife transferred to him in trust, for the benefit of their five children, certain shares of stock which he had previously conveyed to her as a gift. In the trust instrument he, as trustee, was given broad powers over the trust *res*, including the right to expend the trust income in payment of premiums for life insurance upon his own or his wife's life, and to make loans to either of them without security or liability for any losses resulting therefrom. In addition, he had the right to terminate the trust at any time and to take over the trust property as his own. The Circuit Court of Appeals for the Second Circuit held that the property and the income therefrom were so clearly subject to the taxpayer's unfettered command that they were, in substance, his; and even though he did not see fit to use the property or the income during the taxable year, the income was held to be taxable to him under the broad and comprehensive language of section 22 (a).

Respondent argues that the facts of the instant proceedings are similar in all material respects to those in the *Jergens* and *Richardson* cases. That there is some similarity can not be disputed. Here, as in the cited cases, the wife conveyed to the trust stock which she had previously received as a gift from her husband. Here, as in the *Jergens* case, policies of life insurance were conveyed to the trust, the premiums on which were designed to be paid from trust income. In the *Richardson* case, the husband was empowered to use the trust income for such purpose.

In many respects the powers acquired by Cartinhour as trustee are comparable with those acquired by the taxpayers in the *Jergens* and *Richardson* cases. Under the provisions of paragraph eleven of the trust instrument he had the power to remove the co-trustee and to appoint a successor trustee, and in like manner, to remove successor trustees and to appoint trustees in their stead. Such a power, as respondent points out, was substantially the equivalent of being sole trustee of the trust and thus endowed with all the powers conferred upon the trustees. Cf. *Hormel* v. *Helvering*, 312 U. S. 552; *Verne Marshall*, 1 T. C. 442. Thus, he, as trustee, had the power to control investments of the trust estate without being subject to any limitation or restriction imposed with respect to investment of trust funds by the laws of the State of Tennessee. He could determine the amount of the income or corpus of the trust to be distributed to his minor children for their support, education, and assistance; the amount to be used to pay, not only the premiums on life insurance policies upon his own life, which were a part of the corpus, but also upon such additional policies as might be made subject to the terms of the trust, and the

amount to be turned over to any beneficiary who should attain the age of 30 years. He was also empowered to vote the shares of stock of the insurance company, of which he was vice president and secretary, and, in case of a division or distribution of corpus, to divide or distribute in kind, or partly so, and his judgment as to value was conclusive.

While it is apparent from the above, that petitioner was given broad powers over the trust corpus and income, they were not, in our opinion, quite so broad or far reaching as were those given to the taxpayers in the two cited cases. He did not have the power to withdraw all or any part of the corpus of the trust, or to alter, amend or modify, or revoke it in whole or in part, possessed by the taxpayer in the *Jergens* case, nor did he have the right to terminate the trust at any time and to take over the trust property as his own, such as was possessed by the taxpayer in the *Richardson* case. The question arises, therefore, whether the absence of these powers is sufficient to distinguish the instant proceedings from those relied upon by the respondent. In other words, can it be said, as was said in those cases, that the property and the income therefrom were so clearly subject to petitioner's unfettered command that they were, in substance, his?

The courts' opinions in the *Jergens* and *Richardson* cases convince us that they would not have held that the taxpayers therein acquired unfettered dominion over the trust corpus and income of the trusts had it not been for the provisions of the trust instruments under which they might have taken the corpus and the income to themselves. The Circuit Court of Appeals for the Second Circuit in the *Richardson* case based its conclusion primarily on the fact that: "The power of revocation which, in the case at bar, was vested in the taxpayer under the five trusts and might at any time be exercised for his own benefit involved still greater control on his part than the powers of reinvestment retained by the grantor in *Helvering* v. *Clifford* [309 U. S. 331]." In the *Jergens* case, the Circuit Court of Appeals for the Fifth Circuit based its decision on the following facts:

With respect to the shares of stock, which were the only income-producing properties in the trust estate, and the income thereof, the taxpayer was given control so absolute as to be consonant with full ownership. The trust instrument gave him unlimited power to withdraw the stock from the trust or to alter or amend the provisions of the trust relative to the income thereof in any way. After consideration of these provisions of the instrument, the Commissioner, the Tax Court, a majority of this court, and petitioner himself agree that the taxpayer had complete command over the stock and its income during the tax years involved, and that he might have taken the stock or its income for himself or disposed of it otherwise at his pleasure.

In *Ella E. Russell*, *supra*, also relied upon by respondent, where a husband created trusts for his wife and four minor children, we held

that the wife was taxable on the income of the trusts because of rights to income given to her and because she was given the right to withdraw any or all of the principal of the trust created for her benefit and any or all of the principal of the other trusts "for application to her own use or the maintenance, education, care, and support of children and issue as she shall determine."

In the instant proceedings, petitioners created an irrevocable trust for the benefit of their two minor children. Cartinhour was not the grantor of the income-producing corpus. His contribution consisted of non-income-producing policies of insurance upon his own life. We do not have, therefore, a situation calling for the taxation to the grantor of the income of a trust either because of its short duration and the fact that he will soon reacquire complete dominion, *Helvering* v. *Clifford, supra,* or because of its long duration and the retention by him of a substantial measure of control over the disposition of corpus or income, *Commissioner* v. *Buck,* 120 Fed. (2d) 775; *Phipps* v. *Commissioner,* 137 Fed. (2d) 141; *Suhr* v. *Commissioner,* 126 Fed. (2d) 283; *Commissioner* v. *Branch,* 114 Fed. (2d) 985; *Frederick Ayer,* 45 B. T. A. 146; *Jones* v. *Norris,* 122 Fed. (2d) 6; *Lolita S. Armour,* 41 B. T. A. 777; affd., 125 Fed. (2d) 467; and *Frank E. Wolcott,* 42 B. T. A. 1151. The last cited cases, however, provide some measure of guidance, inasmuch as the determinative factor in each was whether the grantor of a long term trust retained such attributes and incidents of ownership as to warrant the taxation of the income to him.

The principles laid down in the cited cases may be briefly summarized as follows: The power to manage trust property, however unlimited, may not operate to bring the grantor within the provisions of section 22 (a) if by such power he can not derive any economic benefit therefrom except whatever advantages he may gain by virtue of the statutory provisions which permit the creation of trusts or estates. *Jones* v. *Norris, supra; Commissioner* v. *Branch, supra; Suhr* v. *Commissioner, supra.* The control over the income exercised by the grantor must be "very substantial" if the income is to be considered his. *Commissioner* v. *Buck, supra; Phipps* v. *Commissioner, supra.* The fact that the trustee may be changed by the grantor, *Jones* v. *Norris, supra,* or that a co-trustee may not be regarded as independent, *Phipps* v. *Commissioner, supra,* is not necessarily controlling.

While it is true that Cartinhour was given rather broad powers with respect to the management of the trust estate, they were given to him in the fiduciary capacity of trustee, and not as an individual. As heretofore pointed out, he did not have the power to alter, amend, revoke, or terminate the trust, nor could he vest title to the corpus in himself. The only benefit he could receive from the income was in the event he and his co-trustee exercised the discretionary power given

to them to distribute it for the support, education, or assistance of the beneficiaries, his minor children. The discretionary power was not exercised and no part of the income was used for this purpose during the taxable years.

The income of a trust is taxable to a grantor under the provisions of section 167 where he has reserved the power to use it to discharge his legal obligation to support his children, even though it was not actually used for this purpose. *Helvering* v. *Stuart*, 317 U. S. 154. We know of no instance, however, where such a power, acquired by a trustee who was not the grantor of the income producing property, has been construed to subject him to tax under this rule. The mere possibility that such an expenditure might be made does not, in our judgment, constitute a sound basis for attributing to Cartinhour the substantial ownership of property which was held by him and his co-trustee in trust for his children. Respondent in our judgment erred in his determination that Cartinhour is taxable under the provisions of section 22 (a).

Respondent's second contention is that Cartinhour is taxable upon the trust income under section 167, I. R. C., for the reason that he was, in substance, the sole grantor of the trust. In support of this contention he points to the fact that the 660 shares of stock conveyed to the trust by Kathleen were part of 1,200 shares of such stock given to her only four years earlier, and that Cartinhour testified the stock had been given to her for the protection of herself and their minor children. Respondent argues that in view of this, and in the light of the norms of human conduct, it is no violation of economic realities to conclude that his wife returned 660 shares of the stock to him in order that he might convey it to the trust for the protection of his minor children.

The evidence does not support this argument. On the contrary it clearly indicates that Cartinhour made a gift of 1,200 shares of the stock to his wife in 1931 and in 1935 she conveyed 660 of them to the trust. Since he was not the grantor of this stock, the sole income-producing asset conveyed to the trust, he can not be taxed with the trust income under the provisions of section 167 (a) (1) or (2), *supra*. *Whiteley* v. *Commissioner*, 120 Fed. (2d) 782; certiorari denied, 314 U. S. 657, and *Purdon Smith Whiteley*, 42 B. T. A. 316, relied upon by the respondent, are distinguishable on their facts. Cf. *George H. Whiteley*, 2 T. C. 618.

Respondent's contention that the trust income is includable in Cartinhour's gross income under subdivision (3) of section 167 (a), *supra*, at first blush may seem to be sound; for he was a grantor and trust income was applied to the payment of premiums upon policies of insurance on his life. But as we view it the statute was never intended to apply in a situation such as disclosed by the facts presently before

us. The income in issue was derived solely from property contributed to the trust by Kathleen. In *Burnet* v. *Wells*, 289 U. S. 70, and the other cases cited by respondent, the one upon whose life the policies had been issued had contributed the income-producing property to the trust. This was emphasized by the Court, Mr. Justice Cardozo remarking that Wells, in effect, had "said to the trust that for the rest of his life he would dedicate a part of his income to the preservation of these contracts, so much did they mean for his peace of mind and happiness." Cartinhour, however, had not chosen to dedicate any of his property to preserving his contracts unless we should find, contrary to what we believe the fact to be, that his wife had returned the stock to him to be used for that purpose. Thus the rationale of the *Wells* case is not applicable unless we superimpose upon it a theory, not even suggested by respondent, that the wife's identity is merged in that of her husband. We need not go so far as to hold, as was held in *Commissioner* v. *Jergens*, 127 Fed. (2d) 973 (cited by petitioner), that premiums paid on life insurance policies donated to a trust are not to be considered as income of the grantor unless he retained "an economic interest in the policies" and could receive something from the accumulations or proceeds. (Cf. *Stephen Hexter*, 47 B. T. A. 483.) We are of the opinion and hold that the income in issue may not be included in Cartinhour's gross income under subdivision (3).

The third contention of the respondent is that Kathleen is taxable upon the income of the trust under the provisions of section 167 (a) (1) and (2), *supra*, because of the possibility of the use of the trust income in discharging her legal obligation to support her minor children.

The grantor of a trust is taxable upon the entire income thereof, where such income may be used to discharge his or her legal obligation to support minor children, although it may be used only in the discretion of the trustees and not in the discretion of the grantor. *Helvering* v. *Stuart, supra*.

Section 8463 of Michie's Tennessee Code of 1938 provides as follows:

8463. *Fathers and mothers are joint and equal natural guardians of their minor children: and are equally charged with their support, etc.*—Fathers and mothers are joint natural guardians of their minor children, and they are equally and jointly charged with their care, nurture, welfare, education, and support, and also with the care, management and expenditure of their estates. Fathers and mothers have equal powers, rights, and duties with respect to the custody of their minor child or children, and the control and the services and earnings of such minor child or children; provided, that so much as may be necessary of the net income of such minor child may be expended in his care, maintenance and education.

Despite this provision it is contended that the legal obligation to support minor children is still primarily that of the father under the laws of Tennessee, where he is in position to render that support, and that in the years 1939 and 1940 Kathleen had no legal obligation to support the children because the evidence discloses that her husband was financially able to provide for their support.

Petitioners cite *Evans* v. *Evans*, 125 Tenn. 112; 140 S. W. 745; *Graham* v. *Graham*, 140 Tenn. 328; 204 S. W. 987; *Owen* v. *Watson*, 157 Tenn. 355; 8 S. W. (2d) 404; and *Carey* v. *Carey*, 163 Tenn. 486; 43 S. W. (2d) 493. In those cases the Supreme Court of Tennessee held that the father is primarily liable for the support of his minor children and that, where there is a divorce, the father still remains liable for the support of his children even though their custody had been awarded by the divorce decree to the mother.

Respondent relies upon *Brooks* v. *Brooks*, 166 Tenn. 255; 61 S. W. (2d) 654, and *Rose Funeral Home, Inc.* v. *Julian*, 176 Tenn. 534, 144 S. W. (2d) 775. Petitioners insist that these cases also support their contentions; but we are unable to agree. In the latter case the Supreme Court of Tennessee said:

(5) *Evans* v. *Evans*, supra ; *Graham* v. *Graham*, supra, *Owen* v. *Watson*, supra, and other decisions of this court upon which as heretofore stated, plaintiff relies, preceded or did not consider chapter 41 of the Acts of 1923 and chapter 79 of the Acts of 1927, carried into the Code at section 8463, * * *

*       *       *       *       *       *       *

By this section of the Code the obligation for the support of a minor child is no longer primarily charged upon the father, but father and mother are equally and jointly charged with the child's care, nurture, welfare, education, and support. This statutory provision was considered by the court in *Brooks* v. *Brooks*, 166 Tenn. 255, 61 S. W. 2d 654. In that case it was said:

"The obligation previously resting upon the father to maintain and support his minor children cannot be said to have been destroyed by this statute. That obligation was to provide for the child 'in a manner commensurate with his means and station in life.' *Evans* v. *Evans*, supra. The obligation cast upon the mother by the statute must be measured by the same varying and relative standard. It is obvious, therefore, that the 'equal and joint' obligation imposed upon both parents cannot be divided between them by arbitrary or mathematical measure. The obligation of both to provide a support for their child is equal and joint, in so far as the child is concerned, but a controversy between the parents, as to the proper contribution of each, seems to us to be determinable only by equitable principles and rules, with due regard to the condition and means of each."

In the instant proceedings there is no controversy between parents as to the proper contribution of each toward the support of their minor children. We are concerned only with whether a wife, under Tennessee law, has a legal obligation to support her minor children. The Supreme Court of Tennessee, in our judgment, has decided that she does. Its decision is binding upon us. *Freuler* v. *Helvering*, 291 U. S.

35. It follows that Kathleen is taxable upon the income of the trust under the *Stuart* case because it may be applied, in the discretion of trustees having no substantial adverse interest, to the payment of her legal obligation.

Since the submission of the instant cases the Congress has added subsection (c) of section 167, I. R. C., by section 134 of the Revenue Act of 1943.[2] The amendment has a limited retroactive effect, as indicated by section 134 (b) (2).[3] We assume that the parties will be able to agree upon the application of the new legislation, and

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER, *J.*, dissents.

STERNHAGEN, *J.*, dissenting: Section 167 (a) (3) of the 1936 Act provides that where any part of the income of a trust is applied to the payment of premiums upon policies of insurance on the life of the grantor such part shall be included in computing the net income of the grantor. See *Burnet* v. *Wells*, 289 U. S. 670. This is now interpreted in the Court's opinion to apply only to a case where the part of the trust income so used is derived from property contributed by the insured. I think this is an unwarranted restriction which defeats the obvious intendment of the statute and provides a plain loophole. It is not necessary to deal with every possible case where several persons may create a common trust; this is a case where a husband and wife create the trust and require that the income from the property, which is contributed by the wife, shall be used to pay the premiums upon the husband's insurance. In such case, I think the words *the grantor* may properly be interpreted collectively and in a proper case the words *premiums* and *policies* may be interpreted to include the singular. This is not a distortion of the language; it is but a proper exercise of

---

[2] (c) Income of a trust shall not be considered taxable to the grantor under subsection (a) or any other provision of this chapter merely because such income, in the discretion of another person, the trustee, or the grantor acting as trustee or cotrustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed. In cases where the amounts so applied or distributed are paid out of corpus or out of other than income for the taxable year, such amounts shall be considered paid out of income to the extent of the income of the trust for such taxable year which is not paid, credited, or to be distributed under section 162 and which is not otherwise taxable to the grantor.

[3] (2) RETROACTIVE EFFECT.—The amendments made by subsection (a) shall also be applicable with respect to all taxable years to which such amendments are not made applicable under paragraph (1), in the same manner as if such amendments had been a part of the revenue laws applicable to such taxable years, but only if there are filed with the Commissioner (in accordance with regulations prescribed by him with the approval of the Secretary) at such time and by such persons as may be prescribed under such regulations, signed consents that there shall be paid, at such time as the Commissioner may prescribe, all of the taxes under Chapter 1 of the Internal Revenue Code or under the corresponding provisions of prior revenue laws which would have been paid for the taxable years concerned if such amendments had been, a part of the revenue laws applicable to such taxable years.

the normal judicial function of filling the interstices to protect the obvious purpose of the legislation.

I am therefore of opinion that, in Dockets 418 and 112706, the amounts used by the trust to pay the premiums on Cartinhour's insurance are included within his individual net income.

MURDOCK, KERN, and OPPER, *JJ.*, agree with this dissent.