Jonnie Cole v. Commissioner. M. T. Cole v. Commissioner.
Cole v. Commissioner
Docket Nos. 2892, 2893.
United States Tax Court
1944 Tax Ct. Memo LEXIS 64; 3 T.C.M. (CCH) 1142; T.C.M. (RIA) 44355; October 30, 1944
*64 S. G. Winstead, Esq. and J. P. Jackson, Esq., 1801 Republic Bank Bldg; Dallas, Tex., for the petitioners. William G. Ruymann, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: The present proceedings involve individual income taxes for the calendar years 1938 and 1939. The Commissioner determined the following deficiencies: Docket
Number
1938
1939
2892
$578.77
$910.38
2893
578.77
910.38 In determining the deficiencies, he added to the net income of each of the taxpayers for 1938 and 1939 sums equal in amount to one-half of the income for 1938 and 1939 of certain trusts created by the taxpayers. Other adjustments were made by the Commissioner, but they are not assigned as errors in these proceedings. The only issue presented is whether the petitioners are taxable on the income of these trusts under section 22 (a) of the Revenue Act of 1938 and of the Internal Revenue Code. Findings of Fact M. T. Cole and Jonnie Cole are husband and wife. In 1932, they moved to Denton, Denton County, Texas and have resided there since that time, including the calendar years 1938 and 1939. Together they constitute a marital community under *65 the laws of the State of Texas. M. T. Cole is primarily a rancher and a farmer. Prior to coming to Denton, Texas, he resided in East Texas where he owns valuable royalty interests in oil properties. He has continued to reside in Denton, Texas because of the better educational facilities available to his minor children. M. T. Cole and Jonnie Cole created four trusts. Trust No. 1 was created on November 28, 1934, Trust No. 2 on September 14, 1935, and Trust No. 3 on August 1, 1938. Trust No. 4 was created on December 28, 1939, but it had no income in 1939. All the trusts were properly acknowledged and duly recorded with the clerk of the county court of Denton County, Texas. Trusts Nos. 1, 2, and 3 are incorporated herein by reference in their entirety. The material provisions of Trusts Nos. 1, 2, and 3 are the same and any provisions hereinafter quoted from Trust No. 1 are also part of Trusts Nos. 2 and 3. Pertinent parts of these trusts are summarized below. The original beneficiaries of these trusts are the children of the settlors, namely, Mary Jane Cole (born February 16, 1911), Martin Thomas Cole (born January 5, 1913), William Ralph Cole (born February 20, 1914), Jack Lewis *66 Cole (born December 22, 1921), Virginia Myrle Cole (born October 28, 1924), and Robert Frank Cole (born August 29, 1929). Another son, John Howard Cole, was an original beneficiary of Trusts Nos. 1 and 2, but he died on November 11, 1936. During 1938 and 1939, the beneficiaries of these trusts were the six children named above. The trustees during 1938 and 1939 were M. T. Cole (petitioner in Docket No. 2893), and his two sons, Martin Thomas Cole and William Ralph Cole. These three individuals were the original trustees named in Trusts Nos. 2 and 3. The original trustees named in Trust No. 1 were M. T. Cole, Martin Thomas Cole, and Frank M. Cole, the latter a brother of M. T. Cole. William Ralph Cole, a son of petitioners, succeeded Frank M. Cole as a trustee of Trust No. 1 in 1935 when he became twenty-one years of age. The provision of these trusts relating to their duration is as follows: "The life of this trust shall be the life of that one of our beloved children above named, who shall live longest, and at the death of such person the corpus of the trust shall be divided among and between the children who are then living (and the heirs of the body of such children as may be *67 dead), upon the terms and conditions hereinafter provided." The terms and conditions referred to above are that in the event of the death of any child leaving surviving heirs of the body, such heirs are to succeed to the rights of their parent, and in the event of the death of any child not leaving surviving heirs of the body, the portion of such child is to revert to the general fund to be divided among other living children (or their heirs of the body of any other deceased child). John Howard Cole died November 11, 1936, not leaving surviving heirs, and his portion was divided among the six other beneficiaries on April 7, 1941. The profits, rents, and revenues from the trust property were to be distributed annually for the use and benefit of the beneficiaries except in the case of minor beneficiaries (of whom there were three during the taxable years herein involved) and as to them the trust agreements provided as follows: "* * * in lieu of paying over such rents and revenues to any minor, pay the proportion which would accrue to any individual to the natural guardian of the person until such person becomes of age, at which time the proportion of rents and revenues shall be paid *68 to the person becoming of age, and that during the lifetime of M. T. Cole, Sr., his discretion as to the use and disposition of the fund accruing to any minor shall be binding and final on such minor * * *." There was a separate bank account for each trust and at the end of each calendar year, the net distributive share of each minor beneficiary remained in the bank account of the trust it was not distributed to the beneficiary until he became of age. Jack Lewis Cole became of age in December 1942, and checks payable to his order in the amount of $9,345.84, representing his share of the accumulated income in these trusts, were deposited in the Liberty State Bank at Dallas, Texas to his credit. These checks did not bear the endorsement of Jack Lewis Cole because his endorsement was not required by the bank and because he was a member of the Armed Forces of the United States stationed somewhere in California at the time. The following is a record of the amounts of the trust income distributed to the adult beneficiaries: Year
Martin Cole
Wm. Ralph Cole
Mary Jane Cole
1938
$ 10.00
$ 75.00
1939
$3,719.33
1940
5,064.14
1,354.82
4,999.14
1941
1,802.00
1,801.99
1,801.99
1942
1,051.01
1,051.01
1,051.00
1943
1,418.66
1,418.66
1,418.66
*69 All of this income from the trusts, with certain minor unimportant exceptions, was applied by M. T. Cole (the settlor) to the various bona fide loans which he made to these three children. This application of trust income was made with the consent of the beneficiaries but without any a priori agreement between them and M. T. Cole that their distributive share of the net income of these trusts would be so applied. The following is a schedule of these loans and of the various sums credited against them, the figures being taken from books kept by M. T. Cole: Martin Cole Amount
Salary
Credit on
Credit
Cash Paid
Year
of Loans
Credited
Sale of Oats
Cash
on a/c
1933
$ 438.20
1934
1,616.08
$ 524.85
1935
1,435.54
1,163.49
1936
1,696.09
1,696.09
1937
2,564.00
1,316.09
1938
2,378.96
1,000.00
1939
4,288.41
1,000.00
1940
3,800.86
1,000.00
$1,000.00
$5,064.14
1941
4,687.83
1,000.00
1,802.00
1942
5,959.65
1,000.00
1,051.01
1943
7,611.36
1,000.00
1,418.66
$6,450.00
Wm. Ralph Cole
Credit on
Sale of Calves
1933
887.45
1934
549.29
1935
532.30
532.30
1936
833.63
583.63
1937
248.60
248.60
1938
682.79
600.00
1939
2,097.33
300.00
3,172.53
1940
5,624.66
500.00
394.33
1941
7,401.00
700.00
487.50
1,802.00
1942
5,627.49
1,000.00
520.00
1,051.00
1943
10,328.43
1,000.00
8,418.68 Mary Jane Cole
1933
97.45
1934
1,000.33
1935
680.00
1936
1,816.07
1937
1,072.50
1938
493.66
1939
1,181.98
1940
3,136.00
4,999.14
1941
3,817.12
1,801.99
1942
3,638.32
1,051.00
1943
5,159.37
1,418.66
6,000.00
*70 In 1938 and 1939, both William Ralph Cole and Martin Cole worked full time for M. T. Cole and the salaries listed above represent the compensation paid them for such work. No interest was charged on M. T. Cole's books for these loans, which he carried on his books as accounts receivable. No security and no promissory notes were given by any of the children for these loans. M. T. Cole considered his children to be unconditionally obligated to repay the amounts of these loans. On or about May 1, 1943, M. T. Cole made gifts of $3,000 to Mary Jane Cole, Martin Thomas Cole, and William Ralph Cole and to each of their respective spouses. The account of each of these donees was credited with the sum of $6,000.00 on or about the same date, to-wit: May 1, 1943. Each trust instrument conferred upon M. T. Cole the following exclusive powers: "During the lifetime of M. T. Cole, Sr., named as trustee hereinabove, he shall have the exclusive management and control of the above described property, and such other property as shall hereafter be acquired by this trust; shall have the right to sell same and invest the proceeds in such other property as he may see fit and the trustees herein named *71 and their successors in office shall be bound to convey any part or all of said property upon his order to such person or persons as he may name and upon such terms and conditions as he may require, and in as many different tracts as he may require, but the proceeds of the said sale or sales shall be held as the corpus of the trust until reinvested and thereafter the property acquired by such reinvestment shall be held intact unless the said M. T. Cole shall direct the sale of same under the preceding provisions of this instrument until it may be distributed upon the terms and conditions hereinafter set out, as it is the special intent and purpose of this instrument that title to the above described property shall pass with this instrument and that the trustees shall hold the title to same and to all property hereafter acquired by the trust estate herein created, in trust for the use and benefit of our beloved children, share and share alike, to be distributed as hereinafter provided, and that said M. T. Cole, Sr., shall have no title in or to the property herewith conveyed except that of a mere naked trustee, and the authority given in this paragraph is because of the belief of the *72 grantors herein that his judgment as to the management of the property shall be for the best interests of the cestui que trustent. * * * * * "After the death of said M. T. Cole, Sr., the trustees shall not be authorized to sell or dispose of the property herewith conveyed or hereafter acquired by or deeded to the said trust or trust estate." With the exception of these exclusive powers conferred upon M. T. Cole, all authority granted in the trust was to be "exercised by the trustees acting jointly and in all cases a majority of the three trustees shall control in any matter in which there shall not be a unanimous opinion." The duty to manage and control the property after the death of M. T. Cole devolved upon the other trustees, as to whom the trusts provided there shall always be three in number. Vacancies in the office of trustee were to be filled by other children of the settlors in the order set forth in the trusts. In practice M. T. Cole was the only trustee who ever drew checks in connection with the administration of the trusts. The trustees generally were empowered to "lease or contract with reference to the property either as a whole or in parcels as to such trustees *73 may seem to produce the best total returns * * *." All the trusts contained the following express prohibition: "It is especially directed that the trustees hereinabove named and their successors as herein provided shall not have authority to borrow money or to encumber the trust property." In addition to the foregoing provisions each trust further provided as follows "Neither the trustees nor the cestui que trustent shall live on the property herewith conveyed or use any part of the same except that any such persons so using any part of the property shall pay the reasonable annual rental for such use for such part of such property. Such reasonable annual rental to be determined by the three trustees as is provided for determination of other matters by the trustees." The settlors reserved no power in any of the trusts to alter, amend, or revoke the trusts or any of the provisions thereof. The purpose of M. T. Cole in creating these trusts was to provide security for his children in the form of homes and lands. Neither M. T. Cole nor his wife ever purchased any of the trust property. Neither of them ever borrowed any money from the trusts nor otherwise used the trust income *74 for their personal benefit. None of the trust income was ever used for the support of any of the petitioners' minor children. The following is a schedule of the corpora of Trusts No. 1, 2, and 3, together with the fair market value of the various tracts of land as of the date of the creation of each trust, as shown in the gift tax returns filed by the petitioners: Trust No. 1
Trust No. 2
Trust No. 3
Caruth Tract - 2000 acres of
Coston Tract - 518 acres part-
Park Tract - 2290.4 acres.
which 500 acres in cultiva-
ly in cultivation and partly
Value - $45,893.71
tion and 1500 in pasture.
in pasture.
Jones Tract - 910.5 acres.
Value - $65,000
Value - $10,360
Value - $32,995.74
Lowe Tract - 428 acres of
Bullard Tract - 640 acres of
Life Insurance Policy No.
which 200 acres in cultiva-
which between 500 and 600
4522458.
tion and 228 in pasture.
acres in cultivation and the
Value - $12,128
balance in pasture.
Value - $10,094.80
Value - $30,300
Premium Paid on Policy No.
Lively Tract - 100 acres all of
4522458.
which in pasture.
Caruth - Paine Tract - 318
Value - $1,901.70
Value - $2,500
acres.
Life Insurance Policy No.
Value - $10,335
696698.
Settler Tract - 193 acres all of
which in pasture.
Day Tract - 1996 acres.
First Annual Premium.
Value - $4,500
Value - $64,370
Value - $10,649.00
Total Value
Total Value
Total Value
$84,128.00
$115,365.00
$101,534.95
*75 An additional gift was made by the settlors to Trust No. 2 on May 16, 1938. This gift was an endowment policy on the life of Martin Thomas Cole in the face amount of $100,000. Trust No. 2 was the sole owner of this policy, and the annual premium on said policy was $10,649.00. The settlors in 1938 and annually thereafter made a gift to Trust No. 2 of the amount of the premium due on this policy. The total value of the assets of Trust No. 2 at the end of 1942 was $236.925.67. The settlors also made an additional gift on May 11, 1940 in the amount of $5,000.00 to each of the trusts. Except for the insurance policies, the corpora of these three trusts consisted of farm and ranch lands. They constituted substantially all the farm and ranch lands which had been owned by petitioners. These lands contained such ordinary improvement as would be found on a typical ranch or farm, such as barns for the storage of hay and grain and for livestock, wells, windmills, sheds, fences, and tenant houses. More specifically, on the Caruth Tract (Trust No. 1) there were two four-room houses (the cost of which was $1,200, each) and a seven-room house (the cost of which was $3,500); on the *76 Coston Tract (Trust No. 2) there was a six-room house (the cost of which was $3,000); and on the Bullard Tract (Trust No. 2) there were two six-room houses (the cost of which was $2,500, each). When M. T. Cole moved to Denton, Texas in 1932, he lived on the Caruth Tract. He was living there in 1934 when the property was placed in trust. He also lived there throughout 1938 and 1939, the taxable years here in question. After the creation of Trust No. 1 on November 28, 1934, M. T. Cole rented the Caruth Tract under an oral agreement with the trustees pursuant to the provisions of the trust indenture with respect to rent. These provisions were later reduced to writing sometime in 1936, and actually executed by M. T. Cole individually and by the trustees of Trusts Nos. 1 and 2 sometime in 1938. That written Memorandum of Agreement is incorporated herein in its entirety by reference. By its terms, M. T. Cole agreed to pay to Trust No. 1 rental as follows: For pasture land, calculated at 2021
acres on the basis of $1.00 per acre
$2,021.00
For cultivated land, calculated at 700
acres at a rental of $4.50 per acre
3,150.00
Total
$5,171.00
M. T. Cole further *77 agreed to pay to Trust No. 2 rental as follows: For pasture land, calculated at 2732
acres on the basis of $1.00 per acre
$2,732.00
For cultivated land, calculated at 740
acres at $4.50 per acre
3,330.00
Total
$6,062.00
This agreement provided that the stated rentals should apply for each year in the future unless and until the rental agreement was changed by the parties. The amount of rent determined upon represented the agreement of all the trustees and that amount was the fair value of similar land in the same neighborhood. Pasture land in Denton County rented for approximately $1.00 per acre and black cultivated land was renting from $3.00 to $5.00 per acre during this period. The property was not offered by the trustees to outsiders for sale or for rent. The Rental Agreement also provided that the rent could be paid in the form of sums spent by M. T. Cole upon trust property for improvements agreed upon by M. T. Cole and the trustees. Various improvements were made by M. T. Cole on the property leased to him and those improvements were agreed upon by all three trustees. M. T. Cole's liability for rent was set up on the books of the trust as an account receivable. *78 Sums expended by M. T. Cole for such things as improvements, repairs, insurance, and taxes were credited annually to that account. The books of account of Trust No. 1 do not show the payment of any rent by M. T. Cole for 1934. The net amount annually due for rent was not paid by M. T. Cole until 1938 when he paid the trusts the net amount due for all years prior to 1938. Beginning with 1938, at the end of each year he annually paid the trusts the net amount he owed for rent. The account of each beneficiary in the trust accounts was credited with that beneficiary's share of the net income of each trust at the end of the year. Actual distribution of the net income of the trusts to the adult beneficiaries did not commence until 1939 in the case of William Ralph Cole and 1940 in the cases of Mary Jane Cole and Martin Cole. There were also distributions of $75.00 to Mary Jane Cole and of $10.00 to Martin Cole in 1938. Prior to 1938 and also during 1938 and 1939, accurate records of the assets of each trust and of all trust receipts and disbursements were kept. The fiduciary returns filed by Trusts Nos. 1 and 2 show the receipt of the following income from rentals for 1937, 1938 and 1939: *79 Trust No. 1
Trust No. 2
1937
$5,171.00
$6,062.00
1938
5,171.00
6,062.00
1939
5,171.00
6,062.00 In 1939, M. T. Cole paid Trust No. 3 for rent the sum of $5,600. These same fiduciary returns show the net income of Trusts Nos. 1 and 2 for 1937, 1938, and 1939 to have been as follows: Trust No. 1
Trust No. 2
1937
$3,289.56
$4,198.34
1938
2,698.89
3,180.27
1939
1,397.27
3,226.25
M. T. Cole subleased part of the lands he leased from the trust either on a fixed fee basis or on a crop-sharing basis. In 1938 he leased the Day Tract from Trust No. 2 for $1,996 and collected $2,000 from the sublessee. Also in 1938, he sublet the Coston Tract (Trust No. 2) for $600, whereas he paid $1,008 to the trust. In 1939, M. T. Cole collected $2,097.74 from the sublessee of the Day Tract as against the sum of $1,996 which he paid as rent to Trust No. 2. The Bullard Tract was subleased by M. T. Cole for 1938 on a crop-sharing basis. He received not more than $1,162.14 from the Bullard Tract's sublessee during 1938, whereas he paid $2,740 as rent to the trust. From 1940 to 1943, inclusive, M. T. Cole sublet the Coston Tract (Trust No. *80 2) to his son William Ralph Cole for $700 per annum. In all instances, the rental payments to the trusts were a fixed obligation represented by a binding agreement, which as to all the properties resulted in rental payments to the trust substantially equal to the amounts received by M. T. Cole from subleasing the trust properties. Although M. T. Cole is primarily a rancher and a farmer, during the years 1933 through 1940, his principal source of income was the royalty interests he owned in approximately 2,000 acres of oil lands in East Texas. As disclosed by his individual income tax returns for these years, the following table shows his income from these oil royalties (less depletion) with his gross income from his farming and ranching operations: Oil Royalties
Gross
Year
(less depletion)
Farm Income
1933
$ 65,756.06
$ 1,947.00
1934
119,890.88
3,875.77
1935
135,567.01
5,036.52
1936
99,855.63
6,171.34
1937
100,222.33
10,721.02
1938
120,065.22
22,668.82
1939
70,863.73
41,898.72 Prior to 1932, M. T. Cole lived on these properties in East Texas. Since 1932, the property has been occupied by his brother, Frank M. Cole, who worked for M. T. Cole all during *81 the period from 1933 throughout 1939. Opinion ARUNDELL, Judge: Once again we are called upon to decide whether the familiar rule of Helvering v. Clifford, 309 U.S. 331, is applicable to a particular set of facts so as to render the income from certain trusts taxable to the settlors under section 22 (a) of the Revenue Act of 1938 and the Internal Revenue Code. The trusts here involved are irrevocable and are not subject to alteration or amendment. They provide that the income shall be distributed annually to the beneficiaries, except that in the case of the minor beneficiaries the income shall be paid to their natural guardian until they become of age and thereafter directly to them. The trusts are limited to terminate upon the death of the last survivor of the children, at which time the principal is to be distributed among the heirs of the body of the deceased children per stirpes. Petitioners reserved no reversionary interest and only upon the remote contingency that they survive all of their children and the issue of such children have they any possibility of reverter by operation of law. The short-term factor of the Clifford case is *82 thus removed from the present problem, and "the control over the income exercised by the grantor must be 'very substantial' in such circumstances if the income is to be considered his." Phipps v. Commissioner, 137 Fed. (2d) 141. The powers possessed by petitioner M. T. Cole over the trust properties and income, relate solely to the management of the trusts and, it must be observed, all of these powers he possessed as a fiduciary. As we said in W. C. Cartinhour, 3 T.C. 482, at p. 489, [1]"The power to manage trust property, however unlimited, may not operate to bring the grantor within the provisions of section 22 (a) if by such power he can not derive any economic benefit therefrom except whatever advantages he may gain by virtue of the statutory provisions which permit the creation of trusts or estates. * * *." By the very fact that the powers of management and control conferred by the trust instrument upon M. T. Cole are fiduciary in nature, he is precluded from *83 exercising them for his own advantage as opposed to the advantage of the beneficiaries. Slay v. Mary Couts Burnett Trust (Texas 1944) 180 S.W. (2d) 480; MacDonald v. Follett (Texas 1944) 180 S.W. (2d) 334. It is now settled that the possession of such fiduciary powers by the grantor-trustee is not sufficient to attribute to him the income of the trusts under section 22 (a) and under the principle of the Clifford case. Commissioner v. Branch, 114 Fed. (2d) 985; Armstrong v. Commissioner, 143 Fed. (2d) 700; Estate of Benjamin Lowenstein, 3 T.C. 1133; David Small, 3 T.C. 1142. The power to lease the property is given by the terms of the trusts to all the trustees to be exercised jointly. There is, it is true, no prohibition against the trustees leasing the property to the settlors or to any other person. However, the trusts expressly provide that "Neither the trustees nor the cestui que trustent shall live on the property herewith conveyed or use any part of same except that any such *84 persons so using any part of the property shall pay the reasonable annual rental for such use for such part of such property." The instrument further provides that the reasonable annual rental is to be determined by the three trustees. In this connection respondent contends on brief, "In any event the petitioner here could avoid the provision requiring him to pay rent by making a sale to himself at his own price of all the properties of the trusts." An analysis of the provisions of that paragraph in the trust instrument relating to M. T. Cole's power of sale demonstrates, however, that that power was held by him in a fiduciary capacity and not for his own benefit. The paragraph refers to him throughout as trustee; it requires that the proceeds of the sale of any property be held or reinvested as part of the corpus of the trust; and it is stated that "* * * the authority given in this paragraph is because of the belief of the grantors herein that his judgment as to the management of the property shall be for the best interests of the cestui que trustent." We conclude on all the evidence that such powers as were retained by petitioner, M. T. Cole, as trustee, are not sufficient *85 to require that he be regarded as the continuing owner of the property placed in trust or of the income thereof. Accordingly, petitioners are not taxable under the provisions of section 22 (a) and under the doctrine of the Clifford case and the determination of the Commissioner is held to be erroneous. The income of the three minor beneficiaries of the trusts could have been used during the years 1938 and 1939 by the grantor, M. T. Cole, for the support, education, and maintenance of these children, under that clause in the trust instruments which provides "that during the lifetime of M. T. Cole, Sr., his discretion as to the use and disposition of the fund accruing to any minor shall be binding and final on such minor." In these circumstances petitioners would have been held taxable under section 167 of the Revenue Act of 1938 as interpreted in Helvering v. Stuart, 317 U.S. 154. The effect of this holding, however, has been limited by section 167 (c) of the Internal Revenue Code which was added by section 134 of the Revenue Act of 1943. Under that section income of a trust is not taxable to the grantor merely because such income may be applied *86 for the support or maintenance of a beneficiary whom the grantor is legally obligated to support, except to the extent the income is in fact so applied. None of the income of the trusts here involved was used for the support or maintenance of the minor beneficiaries during the years 1938 and 1939. Therefore, upon compliance with the conditions set forth in section 134, petitioners are not subject to tax on any part of the income of the trusts for the years involved. Decisions will be entered under Rule 50. Footnotes
1. The Commissioner announced his acquiescence in W. C. Cartinhour, 3 T.C. 482↩, in Internal Revenue Bulletin, 1944-17.