HARRY ROM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6432. Promulgated March 29, 1946.

*A. Leo Weil, Jr., Esq.*, for the petitioner.
*Brooks Fullerton, Esq.*, for the respondent.

OPINION.

SMITH, *Judge:* It is the respondent's contention that the income of the family trusts which was used to pay the premiums on the policies of insurance on petitioner's (the grantor's) life held in the insurance trust is taxable to petitioner under section 167 (a) (3), Internal Revenue Code.[1]

Petitioner contends that the income of the family trusts belonged to and is taxable to the beneficiaries of those trusts and that the amounts thereof which were used to pay the premiums were borrowed from the family trusts and were not "applied" to the payment of the premiums within the meaning of the statute.

The evidence before us does not explain why petitioner did not carry out his declared intention of setting up a fund in the insurance trust with which to pay the premiums on the policies held in that trust. The agreement creating the trust recited that the grantor was transferring certain securities, described in an attached schedule, the income from which was to be used primarily to pay the premiums. However, no securities or other property were transferred to the insurance trust and no "fund" for that purpose was established in that trust or elsewhere. Instead petitioner transferred income-producing securities to the five family trusts which he created at the same time. Those securities consisted solely of shares of preferred stock of M. Rom & Sons Co. Whether they were the same securities that petitioner had originally intended to transfer to the insurance trust, we do not know. We do not know just what was the relationship between the petitioner and M. Rom & Sons Co.

The statute says (section 167 (a) (3) above) that the income of the trust must be taxed to the grantor if it "is, * * * applied to the payment of premiums upon policies of insurance on the life of the grantor." There can be no denial of the fact that all of the income of the family trusts for 1940 and most of it for 1941 was used to pay the premiums on the policies of insurance on the grantor's life. We do not think that petitioner can avoid the consequences of the statute by seeking to establish that the trustees borrowed the income from the family trusts, or from the beneficiaries of the trusts. There was nothing given to evidence any such loans and no such book entries were made at the time. After the revenue agent had made his examination of petitioner's books and records in 1943 and called the trustees' attention to the matter, they then made entries in the accounts of the trusts purporting to show such loans.

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

 * * * * *

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor * * *.

The same three individuals served as trustees of all the trusts. We do not know what relationship they have to the petitioner or the beneficiaries. Apparently they felt free to use the income of the family trusts for payment of the premiums. There is no evidence that in doing so they ever obtained the consent of the beneficiaries or consulted them about the matter. The wife and those of the children who had attained their majority were entitled to receive the income of their trusts annually. The income from the trusts for the minor children was to be held by the trustees for distribution to them when they became 21.

For all that is shown, the grantor, petitioner, was fully cognizant of what the trustees were doing and approved their action. We can not find on the evidence of record that the income of the trusts was not used to pay the premiums on the insurance policies in accordance with the grantor's predetermined plan. See *Burnet* v. *Wells*, 289 U. S. 670.

Among the cases relied upon by petitioner are *Frederick K. Barbour*, 39 B. T. A. 910 (reversed on other grounds, 122 Fed. (2d) 165); *Commissioner* v. *Jergens*, 127 Fed. (2d) 973 (affirming memorandum opinion of the Tax Court); *Stephen Hexter*, 47 B. T. A. 483; and *George F. Booth*, 3 T. C. 605.

The distinguishing feature of those cases (except *Commissioner* v. *Jergens*, *supra*)[2] is that the trust income was not only payable to beneficiaries other than the grantor, but it was actually paid to those beneficiaries and made available to them for their unrestricted use. They, not the trustees, voluntarily paid the insurance premiums. Some of the beneficiaries, as in *Stephen Hexter*, *supra*, had individual income of their own and had been paying the premiums on the policies involved before they were ever assigned to the trust.

In *Frederick K. Barbour*, *supra*, we said:

> The Supreme Court in *Burnet* v. *Wells*, *supra*, recognized the distinction between trusts for the preservation of policies of insurance and those where the trust income may be expended by the beneficiaries without restraint and without the imposition of the grantor's will upon the use of such income. * * * The facts in the present case bring it within such latter class. * * *

If those facts obtained here we would consider the cases cited controlling. However, the evidence here is that the trustees never paid or distributed the income of the family trusts to the beneficiaries and, so far as it is shown, never obtained their consent to use it for the purpose of paying the premiums. The beneficiaries never actually received the income and never had any opportunity to exercise their

---

[2] *Commissioner* v. *Jergens* is not in point here. The insurance premiums which were paid out of trust income there were not on policies of insurance on the grantor's life, but on the life of her husband. Section 167 (a) (3) therefore had no application. See *W. C. Cartinhour*, 3 T. C. 482.

independent control over it. They never "suggested" that it be used to pay the premiums. Cf. *George F. Booth, supra*. We can not assume that Congress intended, in enacting section 167 (a) (3), to make a distinction between instances where the trustees are empowered, by the trust agreement, to pay the premiums out of trust income and where they are empowered to "borrow" the trust income for that same purpose without any limitation or security and without the knowledge or consent of the beneficiaries. The purpose of section 167 (a) (3) being to check tax evasion (*Burnet* v. *Wells, supra*), such an inviting loophole in the law could hardly have been intentionally offered.

The income sought to be reached by the statute is that "applied" to the payment of premiums on policies of insurance on the grantor's life. We think that it was intended to reach income which the trustees, acting within their lawful powers, used for that purpose, whether they denominate such use a loan or call it by some other name. By authorizing the trustees, acting as trustees of the insurance trust, to borrow funds to pay the premiums on the insurance policies and also authorizing them as trustees of the family trusts to lend the funds of the other trusts for that purpose, the grantor made it possible for the trustees to apply all of the income of the family trusts, if necessary, to the payment of the premiums.

Petitioner states in his brief that:

It should also be noted that in all of the foregoing cases the action of the beneficiaries in paying the life insurance premiums was voluntary, and such action was uncontrolled by the grantors of the trusts. Identically the same situation exists in the instant case.

The situation here is not identical. The income was never paid to or made available to the beneficiaries. There is no evidence that the payment of the premiums was "voluntary" on the part of the beneficiaries, or that they took any action whatever in the matter.

The facts here are stronger for the Government than those in *Henry A. B. Dunning*, 36 B. T. A. 1222, decided against the taxpayer. There the trust income was actually paid over to the beneficiary, the grantor's wife, and at his "suggestion" she used a part of it to pay the premiums on policies of insurance on the grantor's life of which she was the beneficiary.

On the facts disclosed by the stipulation, we find no error in the respondent's determination that petitioner is taxable in 1940 and 1941 on the income of the family trusts that was used to pay the premiums on the policies of insurance on his life.

Reviewed by the Court.

*Decision will be entered for the respondent.*