Rita G. Bloomingdale v. Commissioner. Samuel J. Bloomingdale v. Commissioner.
Bloomingdale v. Commissioner
Docket Nos. 1969, 1970.
United States Tax Court
1944 Tax Ct. Memo LEXIS 61; 3 T.C.M. (CCH) 1163; T.C.M. (RIA) 44353; October 31, 1944
*61 Solomon I. Sklar, Esq., 30 Broad St., New York, N. Y., and Sydney C. Winton, Esq., the petitioners. Conway Kitchen, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax against the petitioners in these consolidated proceedings for the taxable years 1937 to 1939, inclusive, in the following amounts: Samuel J. Bloom-
Rita G. Bloomingdale
ingdale
Docket No. 1969
Docket No. 1970
Year
Deficiency
Year
Deficiency
1937
$116,569.48
1937
$114,942.39
1938
114,659.86
1938
99,050.60
1939
121,739.85
1939
118,366.09 Not all of the adjustments are in dispute. The issues for determination are whether petitioners are taxable upon the income of certain trusts created by petitioner, Rita G. Bloomingdale, for her two children. Petitioners filed separate returns for the taxable years with the collector for the third district of New York. Most of the facts have been stipulated. Findings of Fact Facts of general application. The petitioners are husband and wife, residing in New York City. They have lived together as husband and wife since their marriage. They have two *62 daughters, Susan and Louise. Susan was born on March 29, 1917, and became 21 years of age on March 29, 1938. She married on August 11, 1938, and at all times thereafter during the taxable years maintained a separate home with her husband, Richard C. Ernst. Louise was born on March 3, 1919, and she became 21 years of age on March 3, 1940. She married on August 28, 1938, and at all times thereafter during the taxable years she maintained a separate home with her husband, Edgar Cullman. The statutory notice of deficiencies from which the appeal herein was filed by petitioner, Rita G. Bloomingdale, was sent to her by registered mail on March 15, 1943. She filed her Federal income tax return for the calendar years 1937, 1938, and 1939 with the collector for the third district of New York on February 28, 1938, February 24, 1939, and March 15, 1940, respectively. The amount of gross income stated in the return of petitioner, Rita G. Bloomingdale, for the calendar year 1937 was $86,723.83. On January 10, 1942, and January 13, 1942, respectively, the petitioner, Rita G. Bloomingdale, and the respondent executed, pursuant to the provisions of existing Internal Revenue laws, a valid consent *63 and agreement that the amount of any income, excess-profits or war profits taxes due from the petitioner, Rita G. Bloomingdale, for the calendar year 1938 might be assessed at any time on or before June 30, 1943. On January 14, 1943, and January 20, 1943, respectively, the petitioner, Rita G. Bloomingdale, and the respondent executed, pursuant to the provisions of the existing Internal Revenue laws, a valid consent and agreement that the amount of any income, excess-profits or war profits taxes due from the petitioner, Rita G. Bloomingdale, for the calendar year 1938 might be assessed at any time on or before June 30, 1944. The statutory notice of deficiency from which the appeal herein was filed by the petitioner, Samuel J. Bloomingdale, was sent to him by registered mail on March 15, 1943. The petitioner, Samuel J. Bloomingdale, filed his Federal income tax returns for the calendar years 1937, 1938, and 1939 with the collector for the third district of New York on June 13, 1938, February 24, 1939, and March 15, 1940, respectively. The amount of gross income stated in the Federal income tax return of the petitioner, Samuel J. Bloomingdale, for the calendar year 1937 was $232,197.43. *64 The amount of gross income stated in the Federal income tax return of the petitioner, Samuel J. Bloomingdale, for the calendar year 1938 was $79,922.46. During all of the taxable years herein, petitioner, Samuel J. Bloomingdale, was fully able to support his children independently of any income from the trusts and in fact none of the trust income was so used. Petitioners filed gift tax returns covering the various gifts to the trusts as hereinafter set forth. Respondent assessed a deficiency against petitioner, Rita G. Bloomingdale, for gift taxes for the years 1933 and 1934. The deficiencies arose, primarily, from respondent's determination of a higher value for the securities which petitioner had transferred to the trusts. Petitions were thereafter filed by petitioner with the Board of Tax Appeals for a redetermination of respondent's assessments and pursuant to a stipulation between the parties, final decisions were rendered by the Board resulting in the assessment of an additional gift tax against petitioner for the year 1934 and determining an overpayment for the year 1933. Similar proceedings were had in connection with the gift taxes of petitioner, Samuel J. Bloomingdale, *65 concerning his gifts to the trusts as hereinafter set forth, which resulted in final decisions of the Board of Tax Appeals, assessing additional gift taxes against him for the years 1934 and 1935 and determining an overpayment for the year 1933. Issue 1. On September 4, 1930, the petitioner, Rita G. Bloomingdale, executed an indenture of trust with Samuel J. Bloomingdale, her husband, and the Central Hanover Bank and Trust Company (a New York banking corporation with its principal office at 70 Broadway, New York City) as trustees. In and by this indenture of trust, Rita G. Bloomingdale assigned and transferred to the trustees eleven policies of insurance in the aggregate face amount of $450,000 upon the life of her husband and $250,000 face amount 6 1/2 percent bonds of Lyman G. Realty Corporation due January 31, 1978. All of these insurance policies were originally issued to her husband with the exception of policy No. 3403128 Mutual Life Insurance Company of New York, which was originally issued to the petitioner, Rita G. Bloomingdale. All of the policies which were originally issued to the petitioner, Samuel J. Bloomingdale, were assigned by him to his wife as follows: Policy No.
Company
Date of Assignment
816484
Massachusetts Mutual Life
May 14, 1930
877955
Mutual Benefit Life
May 14, 1930
918501
Mutual Benefit Life
May 14, 1930
8331862
New York Life
May 12, 1930
8071366
New York Life
May 12, 1930
8942073
New York Life
Dec. 24, 1924
1503231
Northwestern Mutual
May 12, 1930
249678
State Mutual Life Assurance
May 14, 1930
1037787
Penn Mutual Life
May 12, 1930
685173
Travelers Insurance Co.
May 12, 1930
*66 The petitioner, Rita G. Bloomingdale, was the original designated beneficiary under these policies, as more fully described below: Policy No.
Company
Beneficiary
816484
Massachusetts Mutual Life
Rita G. Bloomingdale
877955
Mutual Benefit Life
Rita G. Bloomingdale
918501
Mutual Benefit Life
Rita G. Bloomingdale
877955
Mutual Benefit Life
Rita G. Bloomingdale
8331862
New York Life
Rita G. Bloomingdale
8071366
New York Life
Rita G. Bloomingdale
8942073
New York Life
Rita G. Bloomingdale,
or to the children of the
insured, share and share
alike, or to the survivor.
1503231
Northwestern Mutual
Rita G. Bloomingdale
249678
State Mutual Life Assurance
Rita G. Bloomingdale
1037787
Penn Mutual Life
Rita G. Bloomingdale
685173
Travelers Insurance Co.
Rita G. Bloomingdale
3403128
Mutual Life Insurance Co.
Rita G. Bloomingdale,
or to the insured's daugh-
ters, share and share
alike, otherwise to execu-
tors, administrators or
assigns of Rita G. Bloom-
ingdale.
In all instances except in the cases of policy No. 8331862, New York Life Insurance Company; policy No. 1037787, Penn Mutual Life Insurance Company; and policy No. *67 249678, State Mutual Life Assurance Company, the right to change the beneficiary was reserved. On November 27, 1931, petitioner, Rita G. Bloomingdale, further transferred to the trustees under the trust indenture another $250,000 face amount 6 1/2 percent bonds of the Lyman G. Realty Corporation, due January 31, 1978. The gross income of the trust during the taxable years was $10,000 in 1937, $10,000 in 1938, and $10,000 in 1939. The net income of the trust for the taxable years 1937, 1938 and 1939 amounted to $9,437, $9,435.53, and $9,427.57, respectively, all of which was applied by the trustees in the taxable years to the payment of premiums upon the life insurance policies heretofore set forth. The trust indenture provided that the trustees were to collect the income of the trust and apply it in payment of the premiums and other lawful charges of the life insurance policies in the trust. If the net income of the trust was not sufficient to meet those payments, the trustees were authorized, in their discretion, to make the payments out of trust principal. Upon the death of the insured, the proceeds of the policies and the other securities and property in the trust were to be *68 divided into as many parts as there were children of the grantor then living. In the event that any child of the grantor had previously died leaving lawful issue, such issue was entitled to have the same share set apart for them as their parent would have been entitled to have set apart for him, if living. The trustees were directed to hold the shares of each of the grantor's children in trust for their respective lives and to pay over to each such child his proportionate share of the net income of the trust during his life. The shares set aside for any issue of a deceased child were to be paid outright to such issue. Upon the death of any child of the grantor for whom a share is held in trust, the trustees were directed to pay the principal of that share as such child might appoint by her last will and testament. Upon the failure of the child to exercise the power of appointment, it was provided that the trustees were to pay such principal to the lawful issue of the child or if there be no lawful issue, then to the other living children of the grantor or the issue of any deceased child, and in default thereof, to such persons as the grantor might appoint by her last will and testament. *69 In the event that the grantor did not exercise that power of appointment, the trustees were directed to pay the principal to the executor or adminstrator of the grantor to be disposed as a part of her estate. The indenture also provided that when any child of the grantor for whom a share of the trust principal shall have been set apart in trust shall attain the age of 30 years or at any time thereafter during the life of such child the trustees were directed, upon the written request of the child, to pay over 15 percent of the principal of the share so held in trust and when the child reached the age of 40 years or at any time thereafter during the child's life, to pay over to such child, upon written request, a similar sum. Provision was also made that if any of the children of the grantor for whom a part or share of the trust estate shall have been set aside in trust married, or desired to form a business or professional connection, or to purchase and furnish a home, the trustees were authorized, at any time upon the written request of such child, to advance to him from the principal of each part or share set apart in trust for him such sums as the trustees in their discretion deemed *70 appropriate. Any such payments, however, were to be deducted from the distributions to be made upon the child's reaching the age of 30 years and 40 years, respectively. It was also provided that during the minority of such child, the trustees were to pay over to petitioner, Rita G. Bloomingdale, as guardian of the person of such child, or in the event of her death or inability to act as such guardian, then to certain other named persons, so much of the net income of such child's share of the trust principal as shall, in the discretion of such guardian of the person, be necessary to maintain and support the child in accordance with his or her station in life. The trustees were not bound or required to see to the application of any payment of income so made. The trustees were required to accumulate the balance of the net income and to pay over the same to such child when he or she attained the age of 21 years. The trustees were authorized to sell any securities held in trust at either public or private sale, upon such terms as the individual trustee might consider advisable; to invest and reinvest any trust principal in such securities or other property as the original trustees might, *71 in writing, approve, although such investments might not be legal investments for trustees under the laws of the State of New York. After the individual trustee, either original or substitute, ceased being a trustee, all investments made by the corporate trustee were to be only in such securities as were legal under the laws of the State of New York, except that the corporate trustee might, in his discretion, continue to hold in trust any securities purchased while the individual trustee was acting as such. The trustees were also authorized to participate in any reorganization, consolidation or merger of any corporations whose stocks, bonds or other securities might at any time be held in trust; to compromise, settle or arbitrate any claim or demand in favor of or against the estate; to exercise conversion or subscription rights to any stocks, bonds or other securities at any time held in trust and to use trust principal for that purpose. Provision was also made that the trustees should purchase with trust principal at market value "any real property situated in the State of New York or personal property wherever situated, owned by Samuel J. Bloomingdale, the insured, at the time *72 of his death, tendered to them, by the executor or administrator of the said Samuel J. Bloomingdale at any time or from time to time within a period of two years after the death of the said Samuel J. Bloomingdale, whether or not such property shall be the kind in which a Trustee is by the laws of the State of New York permitted to invest, provided it shall receive good title thereto from the executor or the administrator of said Samuel J. Bloomingdale." The trustees were also directed to lend to the estate of Samuel J. Bloomingdale such sums of money or property as the executor or administrator of such estate might request in writing, "upon such terms and conditions and upon such security or without security as the said executor or administrator may declare or determine". The trust indenture further provided that upon the written direction of the individual trustee, "the Trustees shall exercise, or omit to exercise, any powers, authority, or discretion given to them by this instrument, * * *". The individual trustee was not entitled to receive any commissions or compensation whatsoever for his services as such trustee. In the event of the death or resignation of Samuel J. Bloomingdale *73 as trustee, or his inability or unwillingness to act as trustee, it was provided that the grantor shall immediately become trustee in his place. The individual trustee, in his uncontrolled judgment and discretion, might at any time remove a corporate trustee. The indenture was to be construed to the laws of the State of New York and it provided that, "The Grantor hereby declares that the trust hereby created is irrevocable and without power in her at any time to revoke, change or annul any of the provisions herein contained". Fiduciary income tax returns were filed for the taxable years. Respondent in the notice of deficiency taxed the income of this trust to petitioner. Rita G. Bloomingdale. Opinion Respondent's first contention is that petitioner, Rita G. Bloomingdale, is taxable upon the income of the trust under section 22 (a) of the Revenue Act of 1936 and the Internal Revenue Code, as that section has been construed in Helvering v. Clifford, Jr., 309 U.S. 331. Although he is unable to point to any possible benefit which petitioner might secure from the trust, he argues that since her husband was in effect the sole trustee with broad powers *74 of control over the trust corpus, petitioner, "through the implied influence which she could exercise over her husband," retained such incidents of ownership in the trust corpus as to make her taxable upon its income under the rule of the Clifford case, supra. This argument, though unique, is insufficient to warrant the taxing of the trust income to petitioner. In order for trust income to be taxable to a grantor under section 22 (a), economic gain must be realized or realizable by the grantor from the creation of the trust. Helvering v. Stuart, 317 U.S. 154. That economic gain may be obtained through a control of the trust so complete that it must be said that the grantor is the owner of its income. That control, however, must be direct, and cannot be implied from the fact that the grantor's husband or another member of her family is the trustee. Robert S. Bradley, 1 T.C. 566; Lillian M. Newman, 1 T.C. 921. The doctrine of the Clifford case, supra, and the Stuart case, supra, has never been extended to a situation where, as here, the grantor is not the trustee *75 and she has completely divested herself of every possible right to secure the benefits of the trust income or trust corpus. The trust was by its terms irrevocable and petitioner could not in any manner amend any of its provisions. Under the circumstances, petitioner could not secure any economic gain from the trust and it is held that the trust income is not taxable to her under section 22 (a). It should also be pointed out that under New York law, there was no parental obligation imposed upon petitioner to support her children since her husband was at all times during the taxable years financially able to assume that obligation. See Lillian M. Newman, supra, and cases cited therein. Consequently, petitioner is not taxable upon the trust income under the rationale of Helvering v. R. Douglas Stuart, 317 U.S. 154. Respondent next contends that petitioner is taxable upon the trust income under section 167 (a) (3), which provides that "where any part of the income of a trust * * * may be applied to the payment of premiums upon policies of insurance on the life of the grantor * * * then such part of the income of the trust *76 shall be included in computing the net income of the grantor". However, in this proceeding, pursuant to the provisions of the trust indenture, all of the trust income was applied to the payment of premiums upon the policies of insurance owned by the trust on the life of petitioner grantor's husband. The trust did not contain any policies of insurance on the life of the grantor and none of the trust income was used for the payment of premiums upon any policies of insurance on her life. Under the circumstances, the cited section is inapplicable to this proceeding. W. C. Cartinhour, 3 T.C. 482; Commissioner v. Jergens, 127 Fed. (2d) 973. Respondent's final contention is that the income of the trust is taxable to petitioner under section 167 (a) (1) which provides that "where any part of the income of a trust * * * may be held or accumulated for future distribution to the grantor * * * then such part of the income of the trust shall be included in computing the net income of the grantor". Respondent apparently argues that under the trust indenture there was a possibility that petitioner might at some future time secure the *77 accumulations of trust income. Under the provisions of the trust indenture, the income might be accumulated during the minority of each child, but it was to be paid to such child on her attaining the age of 21 years. Upon the death of the insured, the trustees were directed to pay the income of the trust to petitioner's children for their respective lives and on their respective deaths, to pay over the principal as each child might appoint by will and in default of such appointment, to the issue of such child, or to the grantor's other living children or the issue of a deceased child. It was only in the event that the children died before reaching the age of 21 years and there were no lineal descendants of the grantor, that the principal and accumulated income would be distributed according to the grantor's last will and testament. There was thus only a very remote possibility of reverter. However, it has been held in many cases that a mere possibility of reverter is not sufficient to cause the income of an irrevocable trust to be taxable to the settlor under section 167. Henry Martyn Baker, 43 B.T.A. 1029, 1035; Marrs McLean, 41 B.T.A. 565, *78 aff'd on another point, 120 Fed. (2d) 942; Frederick Ayer, 45 B.T.A. 146, 152; Christopher L. Ward, 40 B.T.A. 225, 229, reversed on another point, 119 Fed. (2d) 207, where we said, under similar facts, that a possibility of reverter is not a present accumulation "for future distribution to the grantor"; William E. Boeing, 37 B.T.A. 178. Consideration has been given to Commissioner v. Willson, 132 Fed. (2d) 255, upon which respondent relies, but that case is clearly distinguishable upon its facts. Accordingly, it is held that respondent erred in taxing the income of the trust to petitioner. Findings of Fact Issue 2. On December 18, 1930, petitioner, Rita G. Bloomingdale, executed a trust indenture naming her husband, Samuel J. Bloomingdale, as trustee. Under the indenture she transferred to the trustee, in trust, $100,000 face amount 6 1/2 percent bonds of Lyman G. Realty Corporation due January 31, 1978. Under the indenture the trustee was required to divide the trust corpus into two equal parts *79 and to hold one of said parts in trust for the use and benefit of petitioner's daughter, Susan, and to hold the other part in trust for the use and benefit of petitioner's daughter, Louise. The trustee was directed, during the minority of each child, to apply so much of the net income of each child's share as the trustee, "in his uncontrolled judgment and discretion, shall deem necessary and proper, towards her support, maintenance and education, or employ the same for her use and benefit in such manner as the said Trustee, in his uncontrolled judgment and discretion, shall deem proper, and to accumulate the surplus, if any, * * *" of the net income of each child's share. Upon the respective beneficiaries attaining the age of 21 years, the trustee was directed to pay over to each child the accumulations, if any, of her respective share of the net income. Thereafter, the trustee was required to pay the net income of each share of each child until she attained the age of 30 years, at which time the trustee was directed to pay over to such child 15 percent of the principal of the trust estate. Thereafter, each child was to receive the net income from the balance of the share set *80 apart for her until she reached the age of 40 years, at which time the trustee was directed to deliver to such child such part of the balance of the share so held in trust as should equal the 15 percent previously transferred. Thereafter, the trustees were directed to hold the balance of the principal of each share for the remainder of such child's life. In case either of the beneficiaries should marry or desire to form a business or professional connection, or to purchase and furnish a home, the trustee was authorized to advance to such child so much of her share of the principal of the trust as might be necessary, advisable, or appropriate in the discretion of the trustee; provided, however, that such payments were to be deducted from the amount of the payments of principal directed to be made to such beneficiary when she attained the ages of 30 years and 40 years respectively. The trustee was given the power, in his sole and uncontrolled discretion, to either postpone to some future time or withhold and retain within the trust, any part or all of the shares of the principal directed to be paid to the beneficiaries upon their respectively attaining the ages of 30 years and 40 years. *81 When each child reached the age of 21 years, the trustee had the sole and uncontrolled discretion to pay over to such child all or any part of her share of the corpus and in the event that all such corpus was paid over to the beneficiaries, the trust was to be deemed terminated. On the death of either of the beneficiaries, the daughters, her share of the trust corpus was to be distributed as directed by her in a last will and testament and, if no testamentary disposition was made, the property was to go to her issue; or if there were none, to the other beneficiary if then living; otherwise to the issue of the other beneficiary, or if there were none, to petitioner, Samual J. Bloomingdale, or to his estate. During the minority of each child, the trustee was directed to pay to petitioner, Rita G. Bloomingdale, as guardian of the person of such minor, or in the event of her death or inability to act as such guardian, then to certain other named persons, so much of the net income of the share held in trust for each minor as the trustee, in his discretion, deems necessary to maintain and support such minor in accordance with her station in life, "and the Trustee shall not be bound *82 or required to see to the application of any payment of income so made * * *." The trustee was directed to accumulate the balance of the net income, if any, and to pay over the same to such minor when she attained the age of 21 years. Under the trust indenture, the individual trustee was authorized to invest and reinvest any trust property, "in such investments, securities and property (whether speculative, precarious or otherwise) and/or to use and employ the said trust property and estate in such other manner as the said individual Trustee may see fit with full power of sale in connection therewith, and shall not be restricted to investments, securities or property of the character authorized by the laws of the State of New York for trust investments". He was authorized to buy, sell and deal in any securities of any and every kind. Either on margin or otherwise; and "To conduct a speculative account with any brokerage house which the said individual Trustee may from time to time select or approve, and any such account may be carried in the name of the Trustee, either individually or as Trustee, or said account may be carried or conducted under a number, or a fictitious name, or *83 under such other designation, or in such other manner, as the said individual Trustee may from time to time select or approve". He could use the trust property, or any part thereof, in any transaction or speculation in which he might at any time be interested. Provision was made whereby he might borrow at the current interest rates, any and all sums which he might deem necessary and proper in his uncontrolled judgment and he was authorized to pledge, hypothecate, or mortgage the trust property and estate, or any part thereof to secure the repayment of all moneys so borrowed. He was empowered to sell the trust property or any part thereof, to receive the proceeds derived from such sales and to invest and reinvest such proceeds in, "such investments, securities or property, or to use and employ the same in such manner as the said individual Trustee shall, in his or her uncontrolled judgment and discretion deem proper, although they may not be of the character or description prescribed by the laws of the State of New York for the investment of trust funds, * * *". The indenture contained provision that, "it is intended that so long as the said individual Trustee hereinabove named or *84 the said successor individual Trustee hereinafter named shall act as the Trustee hereof, to confer upon the said Trustee the fullest and broadest powers to deal with the trust property and estate, and to use and employ the same in any and every manner that the individual Trustee hereinabove named or the said successor individual Trustee hereinafter named may see fit". The trustee was authorized to cause any securities and property comprising the trust estate to be registered in his name as trustee, or in his name individually, or in the name of his nominee, "or to take and keep the same unregistered and to retain them or any part thereof in such condition as they will pass by delivery". The trustee was authorized to join in or become a party to any agreement or reorganization, readjustment, merger, consolidation or exchange of any corporation whose stocks, bonds or securities comprised a part of the trust estate. He had the sole right to determine whether any dividend received on the trust property is to be added to principal or treated as income. The original trustee or the successor individual trustee, "and any firm of which he or she may be a member, and any corporation in which *85 he or she may at any time be or become in anywise interested, may contract in any manner with the Trustee hereunder, as if a stranger". In case the original trustee, Samuel J. Bloomingdale, should die or resign or become unable or unwilling to act as trustee, it was provided that petitioner, Rita G. Bloomingdale, should immediately become the successor trustee in his place, possessing all the rights and powers conferred upon him. The instrument was to be construed according to the laws of thestate of New York and, "The Grantor hereby declares that the trust hereby created is irrevocable and without power in her at any time to revoke, change or annul any of theprovisions herein contained". The gross income of the trust amounted to $2,000 in each of the taxable years. One-half of the income was accumulated for Susan until she reached her majority on March 29, 1938, and was then paid to her. All of her share of the trust income after she attained her majority was paid to her, namely, $500 in 1938 and $1,000 in 1939. The remaining one-half of the trust income was accumulated for Louise until she reached her majority on March 3, 1940, and was then paid to her. Thereafter, the income from *86 her share of the trust was paid to her. The trustee and the beneficiaries filed their respective income tax returns for the taxable years. Respondent in his notice of deficiency taxed the income from this trust to petitioner, Rita G. Bloomingdale. Opinion Respondent's contentions with respect to this issue are similar to those set forth in the preceding issue. He argues that petitioner is taxable on the income of the trust under section 22 (a) because of indirect benefits which she might secure through control of her husband who was trustee. He also contends that she is taxable under section 167 under the rationale of Helvering v. R. Douglas Stuart, 317 U.S. 154. These contentions must be rejected for the same reasons set forth in the preceding issue. Petitioner was not a trustee and retained no beneficial interest in either the trust income or trust corpus. She had no power to amend the indenture in any respect and there was no possibility of her ever securing any economic gain from the creation of the trust. Also, as heretofore pointed out, she was under no duty to support her children under thelaws of the State of New York. Accordingly, it is *87 held that petitioner is not taxable upon the income of this trust. Findings of Fact Issue 3. On November 27, 1931, petitioner, Rita G. Bloomingdale, executed two trust indentures, naming her husband, Samuel J. Bloomingdale, as trustee. The trusts were for the benefit of their daughters, Susan and Louise, and were identical in language and form, differing only in the name of the respective beneficiary. The respective indentures provided that during the minority of each daughter, the trustee was, in his uncontrolled judgment and discretion, to pay to petitioner, Rita G. Bloomingdale, as guardian of the person of such dauthter, or in the event of her death or inability to act as such guardian, then to certain other individuals, so much of the net income and principal as the trustee might deem necessary and proper for the support, maintenance and education of such daughter, or to employ the same for her use and benefit in any other manner, and to accumulate the surplus net income, if any. When the respective daughter became 21 years of age, the trustee was directed to pay over to her the accumulated net income, if any, and thereafter, to distribute to her the entire net income *88 until she reached the age of 35 years, at which time the trustee was directed to deliver to her one-quarter of the trust corpus. Ther after, she was to receive the net income from the remaining corpus until she reached the age of 45 years, at which time the trustee was directed to distribute to her one-third of the corpus then remaining in his hands. Thereafter, she was to receive the net income from the balance of the trust corpus during her lifetime. On the daughter's death, the trust was to terminate and the trustee was directed to pay over the trust property to her issue. In the event that she died without issue, leaving her sister surviving, the trustee was to pay the trust corpus to the trustee under the correlative trust created for the sister, to be held by him under the terms of such trust. If, however, such other daughter shall have previously died, the trust corpus was to be delivered outright to her issue, and if none, then to Samuel J. Bloomingdale, if living; otherwise to his estate. In the event that the daughter survived both petitioners, the corpus was to be delivered to such persons as she might appoint by a last will and testament, and in the event of her failure *89 to make such a disposition, the trustee was required to deliver the trust corpus to her lawful issue, per stirpes. In the event that she died without issue, leaving her sister surviving, the trustee was to pay the trust corpus to the trustee under the correlative trust created for the sister, to be held by him under the terms of such trust. If the daughter died without issue and her sister did not survive her, the trust property was to be distributed to the sister's lawful issue, and if the sister should leave no lawful issue, the trustee was directed to deliver the trust property to the executor or administrator of Samuel J. Bloomingdale, to be administered as a part of his estate. The indenture also contained the following provisions: For convenience, we refer herein to the provisions of the Louise G. Bloomingdale trust, but similar provisions are contained in the trust for Susan. "(c) The original trustee hereinabove named, or the successor individual trustee hereinafter named, shall have the right and power to and may, in his or her sole and uncontrolled discretion, either postpone to some future time or from time to time, and withhold and retain within the trust any part *90 or all of the portion of the principal hereinbefore directed to be paid over and delivered to the said Louise G. Bloomingdale upon her attaining the ages of thirty-five (35) years and forty-five (45) years. "(d) At any time or times after the said Louise G. Bloomingdale shall have attained the age of twenty-one (21) years, the original TRUSTEE hereinabove named, or the successor individual trustee hereinafter named, shall have the right, power and authority, and is hereby expressly authorized, anything herein contained to the contrary notwithstanding, if in his or her sole and uncontrolled judgment and discretion, he or she shall deem it wise and prudent, and for the best interest of the said Louise G. Bloomingdale so to do, to pay over and deliver to her, either the whole, or any part or parts, of the capital or principal of the trust property and estate so directed to be held in trust for her; and in the event that all of the trust property and estate is paid over and delivered, the trust hereby created shall in all respects thereupon cease and terminate. * * * * *
"FIFTH: So long as the individual Trustee hereinabove named, or the successor individual Trustee hereinafter named, *91 shall act as the Trustee hereof, the Trustee is hereby expressly authorized and empowered, from time to time: "(a) To invest, and from time to time to reinvest, any moneys or funds belonging to or forming part of the trust property and estate, in such investments, securities and property (whether speculative, precarious or otherwise) and/or to use and employ the said trust property and estate in such other manner as the said individual Trustee may see fit, with full power of sale and disposition in conection therewith. "(b) To buy, sell, exchange and deal in any and all securities and property, of any and every kind, nature and description whatsoever, and either on margin or otherwise, as the said individual Trustee may from time to time select or approve. "(c) To conduct a speculative account with any brokerage house which the said individual Trustee may from time to time select or approve, and any such account may be carried in the name of the Trustee, either individually or as Trustee, or said account may be carried or conducted under a number, or a fictitious name, or under such other designation, or in such other manner, as the said individual Trustee may from time to time *92 select or approve. "(d) To use and employ the trust property and estate, or any part thereof, in any transaction or speculation in which the said individual Trustee may at any time be interested. "(e) To borrow any and all sum and sums which the said individual Trustee, in his or her uncontrolled judgment and discretion shall deem necessary and proper, upon such interest rates as the said individual Trustee may deem advisable, and to pledge, hypothecate, or mortgage the trust property and estate, or any part thereof to secure the repayment of any and all moneys so borrowed. "(f) To sell, exchange and transfer and absolutely dispose of the investments, securities and property which shall or may at any time constitute the trust property and estate, or any part thereof, and to collect and receive the proceeds derived from such exchange, sale or sales, and to invest and from time to time to reinvest the same in or upon such investments, securities or property, although they may not be of the character or description prescribed by the laws of the State of New York for the investment of trust funds, and may be speculative, precarious or otherwise, and/or to use and employ the same in *93 such manner as the said individual Trustee shall, in his or her uncontrolled judgment and discretion deem proper, and to hold and deal in the said investments, securities and property as the trust property and estate in lieu of the investments, securities and property so sold or exchanged, and therafter to collect and receive the interest, dividends, income and profits thereof and therefrom and to hold, deal in and dispose of the same upon the like trust as are herein expressed and declared with respect to the original trust property and estate. "(g) It is expressly understood and agreed that the enumeration of the foregoing powers or any powers in this agreement conferred on the Trustees at any time acting hereunder shall not be construed as in any wise limiting or restricting the powers of the individual Trustee, hereinabove named, and the said successor individual Trustee, hereinafter named, to those herein specified, but it is intended that so long as the said individual Trustee, hereinabove named, or the said successor individual Trustee, hereinafter named, shall act as the Trustee hereof, to confer upon the said Trustee the fullest and broadest powers to deal with the trust *94 property and estate, and to use and employ the same in any and every manner that the individual Trustee, hereinabove named, or the successor individual Trustee, hereinafter named, may see fit. * * * * *
"NINTH: After the original individual Trustee, hereinabove named, and the successor individual Trustee, hereinafter named, shall cease to act as the Trustee hereunder, the Trustee or Trustees for the time being are hereby expressly authorized and empowered from time to time to invest and reinvest any moneys or funds belong to or forming part of the trust property and estate in such investments, securities and property as they may deem best, with full power of sale in connection therewith. All such investments and reinvestments, to the extent of at least ninety per centum (90%) of the capital or principal of the trust property and estate, shall be restricted to securities or property of the character authorized by the laws of the State of New York for trust investments. The residue and remainder of such investments need not be of the character authorized by the laws of the State of New York for trust investments but may be in any securities or property, including common stock that *95 the Trustees for the time being may deem proper. The Trustee or Trustees at any time acting hereunder are, however, expressly authorized and empowered to retain and to continue to hold any and all securities or property at any time forming part of the trust estate, whether or not the same would ordinarily be regarded as speculative, without incurring liability for any loss or depreciation which may result therefrom. "The Trustee or Trustees at any time acting hereunder shall not be liable for loss or depreciation in value of any of the trust property or for any investments or reinvestments which they may make or may continue to hold unless they shall have failed to act with reasonable care. * * * * *
"FOURTEENTH: It is hereby expressly understood and agreed, that the GRANTOR shall have the right at any time, and from time to time, to assign, transfer, deliver or deposit with the Trustee additional property of any kind, nature or description whatsoever, which thereupon shall become a part of the trust property and estate, and subject in every respect to the trust hereby created and to the terms and provisions hereof. and the Trustee or Trustees at any time acting hereunder are *96 authorized and empowered, although not required, to retain, subject to the provisions hereof, any and all of such additional property in the form in which it may be received by said Trustee or Trustees, whether or not the same would ordinarily be regarded as speculative, without incurring liability for any loss or depreciation which may result therefrom. "FIFTEENTH: The original individual Trustee, hereinabove named, or the successor individual Trustee, hereinafter named, and any firm of which he or she may be a member, and any corporation in which he or she may at any time be or become in any wise interested, may contract in any manner with the Trustee hereunder, as if a stranger" The indentures also provided that the decision of the trustee as to the value of the securities or property delivered to the beneficiary at the respective times when such property was to be delivered to the beneficiary was final and conclusive. The trustee was also authorized to join in or become a party to any agreement or reorganization, readjustment, merger, consolidation or exchange; to deposit any securities thereunder or to exercise rights to subscribe to new securities and to pay and charge the *97 principal of the trust with any sums which might be required thereby; and to receive and hold any new securities issued as a result thereof, whether or not such securities were authorized by law for the investment of trust funds. He could make distributions in kind or in cash and his determination was conclusive upon all distributees. He had the right to determine whether any dividends received by him on trust property was to be treated as principal or as income and his decision was conclusive on all persons interested therein. The trustee was given the right to register securities and property held by the trust in his name as trustee or in his name personally, or in the name of his nominee, or, "to keep the same unregistered and to retain them or any part thereof in such condition as they will pass by delivery". The trustee was not required to give any bond or other security for the faithful performance of his duties. The indenture also contained the following provision: "SIXTH: And it is hereby further expressly understood and agreed that the individual Trustee, hereinabove named, or the successor individual Trustee, hereinafter named, shall not, nor shall either of them, be liable *98 or responsible for any loss or damage which shall or may happen to or be sustained by the trust property and estate, or anyone interested therein, by reason of any act or thing done, or omitted by him or her to be done, but that all losses, if any, shall fall solely upon and be born solely by the trust property and estate and the beneficiaries interested therein." It was also provided that if Samuel J. Bloomingdale should die or resign or become unable or unwilling to act as trustee, the petitioner, Rita G. Bloomingdale, should immediately become the successor trustee, with all of the rights and powers conferred upon Samuel J. Bloomingdale under the trust indenture. Provision was also made that the indentures were to be irrevocable and were to be construed according to the laws of the State of New York. At the time petitioner created the trusts and from time to time thereafter, she transferred an identical amount of securities to each of said trusts as follows: Date of
Face
Transfer
Description of Securities
Amount
11/27/31
B. Bros.Realty Corp. bonds
$250,000
11/27/31
Lyman. G. Realty Corp. bonds
200,000
6/28/33
B. Bros.Realty Corp. bonds
25,000
11/10/33
B. Bros.Realty Corp. bonds
100,000
12/19/33
B. Bros.Realty Corp. bonds
125,000
11/2/34
B. Bros.Realty Corp. bonds
250,000
*99 Petitioner, Samuel J. Bloomingdale, also transferred to himself as trustee under the trust agreements, an identical amount of securities to each of said trusts as follows: Date of
Face
No. of
Transfer
Description of Securities
Amount
Shares
6/28/33
B. Bros. Realty Corporation bonds
$ 25,000
11/10/33
B. Bros. Realty Corporation bonds
100,000
12/19/33
B. Bros. Realty Corporation bonds
125,000
11/2/34
B. Bros. Realty Corporation bonds
250,000
8/8/35
Federated Department Stores, Inc., common
5,000
12/1/37
Federated Department Stores, Inc., common
3,500
There was never any disposition of or change in the original securities comprising the corpora of the trusts, either by way of investment, reinvestment or otherwise, but such securities were retained and held intact at all times by the trustee. The entire gross income of each of the trusts during the taxable years was identical, being as follows for each trust: 1937, $95,250; 1938, $95,875; and 1939, $93,750. The gross income of each of the trusts during the taxable years from the securities transferred to the trusts by petitioner, Rita G. Bloomingdale, was identical, being as follows for each trust: *100 1937, $52,750; 1938, $52,750; and 1939, $52,750. The gross income of each of the trusts during the taxable years from the securities transferred to the trusts by petitioner, Samuel J. Bloomingdale, was identical, being as follows for each trust: 1937, $42,500; 1938, $43,125; and 1939, $41,000. All of the income of the trust established for Susan was accumulated until Susan reached her majority on March 29, 1938, when such accumulations in the aggregate amount of $325,777.05 was paid to her. Thereafter, all of the income for the taxable years was paid to her, namely, $51,125 in 1938 and $93,250 in 1939. The balance of $500 for 1939 was distributable income, but was undistributed at the close of that year. All the income of the trust for Louise was accumulated until she reached her majority, except that after her marriage in 1938, part of the income was paid to her, namely, $41,000 in 1938, and $48,000 in 1939. The accumulated income, together with the accumulations from prior years, amounting in the aggregate to $416,121.56, was paid and delivered to her on her reaching her majority. During the minority of the daughters, the accumulations of income were invested in Federal, state *101 and municipal bonds. Respondent in his notice of deficiency herein has taxed to each of the petitioners all of the income from both of the trusts. Opinion With respect to petitioner, Rita G. Bloomingdale, respondent makes the same contentions which he made in Issues 1 and 2 herein. For the same reasons heretofore set forth, we reject those contentions and hold that the income of these trusts is not taxable to her. With respect to petitioner, Samuel J. Bloomingdale, respondent contends that the entire income of the trusts is taxable to him under sections 166 and 167 of the Revenue Act of 1936 and the Internal Revenue Code, and in the alternative that the income of the trusts arising from the securities contributed by him is taxable to him under section 22 (a) as that section has been construed by Helvering v. Clifford, 309 U.S. 331. We shall first discuss respondent's alternative contention which arises from the exceedingly broad powers of management which the trustee had during the taxable years. The parties agree that as to the securities transferred by Samuel to himself as trustee, he was both the grantor and trustee, with the same powers granted *102 to him as trustee under the indentures executed by his wife. It should be noted at the outset that the trusts were irrevocable and the grantor relinquished power to amend, alter, or modify the provisions of the indentures. The trusts were to continue at least until the income beneficiary attained her majority but, at that time, if Samuel or Rita then acted as a trustee, all of the trust estate could be distributed to the beneficiary and the trust could be terminated. However, under such termination of the trusts, none of the property in the trusts could be distributed to either Samuel or Rita. Othereise, the trusts were to continue for a considerable length of time. During the taxable years Samuel could not exercise the power to postpone the distribution of any of the principal of the trusts because neither beneficiary had attained the age of 35 years during the period here involved, and this power, covered by paragraph 1 (c) of the indentures could only be exercised by Samuel, the original trustee, or Rita, the successor individual trustee. It is not necessary to give consideration to the powers set forth in said paragraph. We turn, therefore, to the main question. It is whether *103 or not the broad powers of management of the trust property which reposed in Samuel as the sole trustee in the taxable years were such as to bring Samuel, the grantor, within the scope of section 22 (a). In W. C. Cartinhour, 3 T.C. 482, 489, we considered this question. Citing authorities, we stated it to be an established principle that "The power to manage trust property, however unlimited, may not operate to bring the grantor within the provisions of section 22 (a) if by virtue of such power he can not derive any economic benefit therefrom except whatever advantages he may gain by virtue of the statutory provisions which permit the creation of trusts or estates." Commissioner v. Branch, 114 Fed. (2d) 985; Jones v. Norris, 122 Fed. (2d) 6. On the other hand, it must be said that the taxpayer is the owner of income if economic gain may be obtained through complete control of a trust. Helvering v. Stuart, 317 U.S. 154. The crux of the question is whether the grantor-trustee of a trust can derive economic benefit from the broad powers of management vested *104 in him as a trustee. Petitioner had very broad powers of management of the trust property through his right to determine what investments could be made. The striking feature is the lack of restraint upon petitioner in the exercise of his judgment. Margin accounts could be conducted for the trust and any type investment could be made, whether speculative or precarious. But this broad authorization to petitioner as the sole trustee was given to him in his fiduciary capacity, as trustee, and not as an individual, and in itself it does not plainly indicate that petitioner could obtain economic gain to himself in the exercise of such unrestricted judgment even if he had chosen to use it, which he did not. More critical is the authorization to the trustee to use and employ the trust property in any transaction or speculation in which the trustee mayat any time be interested. Does this open the door to petitioner to realize economic gain for himself through his command over the use of the trust property? This is not an easy question to answer because; (1) the power was never exercised, and (2) the realm of supposing possible uses of the power is very broad. We think the answer must *105 be found in the checks to which fiduciaries are subject under New York laws. See Estate of Benjamin Lowenstein, 3 T.C. 1133. It must be assumed that petitioner, the sole trustee, in exercising this power would have to deal fairly on behalf of the trusts so as not to waste the trust assets for his personal advantage. Paragraph 15 of the trust indentures provides that the trustee and any firm or corporation in which he is interested "may contract in any manner with the Trustee hereunder as if a stranger." This clause in itself appears to be a guide to how the broad power above referred to is to be used (paragraph 5 (d)). If the trustee deals with himself as an individual in investing the trust property, or in any enterprise in which he, as an individual is interested, as he may do under the broad powers of management, he must proceed as he would with strangers, under an express provision of each indenture. The grantor, Samuel, had stripped himself of the income and the principal. The powers of management which he could exercise were in him as a fiduciary and not as an individual. In the exercise of those powers, there is no clear indication that he, *106 as an individual, could realize any economic gain without a quid pro quo arrangement with the trusts, as in any arms-length transaction. "A trustee cannot administer a trust to his personal advantage." Estate of Benjamin Lowentein, supra.Under these considerations, section 22 (a) does not apply. Respondent's argument that the income of the trusts is taxable to petitioner under section 166 is rejected on the authority of Estate of Benjamin Lowenstein, supra. It is unnecessary to restate the reasoning there applied, and it is sufficient to state that it applies here to the present trusts which are to be construed in accordance with the laws of the State of New York. There remains for consideration the matter of the application of section 167 to the trusts during part of the taxable years. Under the trust indentures, the trustee could pay trust income in his discretion to Rita, as guardian, for the support of the minor beneficiaries. However, this was not done. None of the trust income was used for the support of the beneficiaries during any of the taxable years. On brief, petitioner relies upon I.T. 3609, C.B. *107 1943, 505, and section 134 of the Revenue Act of 1943, which amends section 167. The amendment provides that income of a trust shall not be considered taxable to the grantor under section 167 merely because such income, in the discretion of the trustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, if in fact such income was not so applied or distributed. The amendment is retroactive to the taxable years if the taxpayer complies with the conditions set forth in section 134 (b) (2) of the Revenue Act of 1943. Petitioner apparently intends to comply with these conditions. We assume that the matter will be disposed of under a Rule 50 computation. See W. C. Cartinhour, supra;J. O. Whiteley, 3 T.C. 1265. Accordingly, Decision will be entered under Rule 50.