Overton, J.
 

 delivered the following opinion of the Court: —
 

 The counsel for
 
 the
 
 plaintiff insist that the Act of 1809 is unconstitutional, and therefore ought to be disregarded, and that, consequently, a
 
 mandamus
 
 ought to be issued.
 

 
 *163
 
 On the fullest consideration of this subject by the Court, it does not seem that one is a necessary consequence of the other.
 

 The Legislature, by the Act of 1807, ch. 2, prescribed a mode for the purpose “of judging and ascertaining the validity of warrants and other legal evidences of-unsatisfied claims to lands within this State.” An officer of high responsibility was appointed by the Legislature for this purpose. After a full investigation of the evidence he was authorized by law to declare claims invalid or otherwise; if the latter, he was to issue a warrant from under his hand, attested by his clerk. A warrant thus issued is assignable, and grants may issue to the assignee in consequence of such assignment.
 

 Whether fraud could be imputed to Dillon, who obtained the warrant, is not material with the Court; the petitioner being a
 
 bona fide
 
 assignee for a valuable consideration, without notice. But if it were necessary to inquire into this point, it does not appéar. The Act of 1809, upon which a refusal to issue a grant is bottomed, does not assert it; it only says that the grant to Donnelson, which enabled Dillon to get this warrant, was grounded on an entry of five hundred instead of five thousand acres. Now this might have been the fact and Dillon perfectly innocent. The presumption is that he purchased in confidence of the grant to Donnelson, which was for five thousand acres. It is not presumed, nor was it required that Dillon should know on what kind of a warrant that grant was bottomed. The grant itself does not refer to the entry on which the Act of 1809 says it was founded. No doubt Dillon showed the commissioner of land claims a regular conveyance, or conveyances, to prove that he was entitled to the five thousand acres expressed in the grant. We are bound to presume this, as the commissioner, who was a public officer particularly intrusted for this purpose, issued his warrant, which is conclusive evidence with all the world that the claim was a good one. It was an act of the State by one of its agents.
 

 With this evidence Dillon was enabled to sell to Williams, the petitioner, upon a common principle of equity, that when one of two innocent persons must suffer, it ought to be him who trusts most.
 

 Williams’s claim is founded not on any personal confidence, but on his confidence in the act of the State by its commissioner.
 

 That Williams gave a valuable consideration is not disputed ; the assignment from Dillon is set out, his entry and survey are regular, and, but for the Act of 1809, no one can doubt but that the Register should have issued him a grant.
 

 In this stage of the inquiry the main ground is perceived whether the Act of 1809 is constitutional; and, if it is not, whether a
 
 mandamus
 
 is the proper remedy, under all the circumstances of the case.
 

 Two sections of the 11th article have been referred to. The 8 th pro
 
 *164
 
 vides “ that no person shall be deprived of his life, liberty, or property, but by the judgment of his peers, or the law of the land.” By the 20th. it is provided “ that no retrospective law, or law impairing the obligation of contracts shall be made.” That the petitioner acquired a vested right by purchase of part of the warrant of Dillon we have no doubt, and that he cannot be deprived of this right by any subsequent legislative act is equally clear. The Court have no hesitation in saying that, where the rights of two individuals are in judicial conflict, any act of the Legislature concerning them, obviously repugnant to the Constitution, is void. But this is not that case.
 

 In order to show that a
 
 mandamus
 
 should issue, the 17th section of the 11th article has been referred to: It provides that all courts shall be open ; and every man, for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the State in such manner, and in such courts, as the Legislature may by law direct; provided the right of bringing suit be limited to the citizens of the State.
 

 This part of the Constitution, as to compelling
 
 the State to
 
 do an act, which in morality and justice it ought to perform, must be viewed as a dead letter, until some mode of proceeding shall be pointed out by the Legislature. As yet, no method has been pointed out.
 

 The obligation contracted by the State, to issue a grant,.or grants, to Dillon, or his assignee, we have no doubt the State is morally bound to comply with ; but does the Constitution, or the nature of our government, furnish the means to the judicial department to compel an observance of this contract, in issuing a grant, when the State has expressly said it will not issue one ?
 

 The State has, by its Act of 1809, prohibited its officer's from issuing a grant, or grants, on this warrant.
 

 Is it proper that the judicial department should order those officers to do an act that is forbidden ?
 

 In all States, the disposition of the soil is an attribute of sovereignty, and emanates immediately from that source. Political considerations may interfere to prevent a State, temporarily, from discharging a moral obligation.
 

 In deference to the State Legislature, we will presume that it did not design preventing the petitioner from obtaining a completion of his right forever; unless indeed the case were otherwise represented to them. If so, they have been deceived; and will, it is presumed, rescind that Act. The Court cannot but perceive, that to grant a
 
 mandamus
 
 in this case, would, in effect, sanction the idea that the State may be sued; and then this writ would be resorted to as the appropriate means of redress. On
 
 *165
 
 .general principles, the idea of an individual citizen, or subject, compelling the sovereign to do an act, is repugnant to every idea of sovereignty. It is true, the Constitution has said the Legislature shall have power to provide a remedy. This, however, they have not done; and until it be done, it is not in the power of the Court to do that, to which the Legislature are competent. Suppose the State indebted to an individual, this Court could not grant a
 
 mandamus
 
 compelling the treasurer to pay it.
 

 There is an obligation, morally speaking, but it is an imperfect one, and the Legislature has not thought proper to give to the judicial department any power or means to compel the performance of it. Until the power shall be communicated, there can be no legal power whatever vested. A desire of self-preservation, is the first law of all being. For the purpose of administering justice, the Constitution has vested in the different departments certain powers. Each department has its province marked out; within which, or within their respective orbits, each must move without collision, — then the Constitution will be preserved from destruction. An assumption of power by one branch of the government, which properly belongs to another, weakens the main pillar on which it rests. By repeated acts of assumption, the fabric totters, falls, and with it all that is valuable.
 

 The Legislature has forbidden its officers to issue a grant. Every act respecting the disposition of the soil, is an act of sovereignty; with the Legislature, where this power resides, it must remain, as to its exercise.
 

 It is the province of the judicial department to determine between man and man; and not between the State and its citizens, where there is no vested perfect right to a grant, either legal or equitable. There is consequently but one party before us. He has a vested right to three thousand two hundred and sixty acres of the warrant, — he has entered and surveyed three thousand acres of it; but we cannot perceive any other individual in conflict. Then indeed the powers of this department of government would be called into action. In due course of law we could not, dare not, withhold redress; the Constitution commands it, and our oath puts a seal to that command.
 

 It is not material to inquire in what respects an entry is a legal or an equitable claim to land. To some purposes, no doubt, it may possess legal attributes ; in general, however, it must be considered as affording only an equitable right.
 

 Considering "Williams’s claim as an equitable one, it is the peculiar business of a court of equity to protect him in the enjoyment of it, against any individual who has not a better one.
 

 It is an inestimable maxim of our law, as governing the rights of individuals, that there shall be no injury without a remedy. Without a grant,
 
 *166
 
 it is certainly true that the petitioner cannot sue, or defend himself in ejectment; but it is equally true, that when legal remedies fail in affording redress, or where there is a clear vested right, .as in this case, to the land covered by the entry and survey, and no legal remedy exists,, equity, which happily adapts its means to the end, will afford relief.
 

 With the view we now possess of this subject, the Act of 1809 seems to be void, on account of its repugnance to the provisions of the Constitution ; but this Court cannot perceive that it possesses any physical power to compel the State to issue a grant. Should any individual hereafter endeavor to avail' himself of that Act, by seating himself on the land, or obtaining a title thereto, a court of equity cannot refuse redress, on the case being properly represented.
 

 Such a mode of proceeding would be acting within the proper sphere of this department, avoid collision with the Legislature, and be consistent with the general principle láid down respecting the writ of
 
 mandamus
 
 now sought for; To obtain such a writ, the party applying must show that he has a legal right, and that he has no other legal specific remedy. 1 T. R. 404; 3 T. R: 652. In this case, the petitioner has not a legal right, — he cannot have that until the Legislature repeal the prohibitory Act.