IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2000

## DANIEL WHITE v. STATE OF TENNESSEE EX REL. BRENDA ARMSTRONG

Appeal from the Juvenile Court for Davidson County
No. 147-123-893    Betty Adams Green, Judge

No. M1999-00713-COA-R3-CV - Filed February 16, 2001

This appeal involves the State's liability to repay child support payments made by a man who had voluntarily legitimated a child he believed to be his own. After this court directed the Davidson County Juvenile Court to grant him prospective relief from the legitimation order in accordance with Tenn. R. Civ. P. 60.02(4), the man requested the juvenile court to order the State and the child's biological mother to reimburse him for the child support payments he had made following the entry of the legitimation order. The juvenile court denied the request on the ground that it lacked subject matter jurisdiction to order the State to reimburse "overpaid child support." We have determined that the juvenile court lacks subject matter jurisdiction to adjudicate these claims and, therefore, affirm the juvenile court's order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Clark Lee Shaw and Cynthia Bohn, Nashville, Tennessee, for the appellant, Daniel White.

Paul G. Summers, Attorney General and Reporter, and Stuart F. Wilson-Patton, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

### OPINION

Daniel White and Brenda Armstrong lived together as husband and wife in the early 1990s. During this time, Ms. Armstrong gave birth to two sons. The older son was born in June 1991, and the younger in November 1992. Shortly after her second son was born, Ms. Armstrong told Mr. White that he was not the boy's biological father. This news precipitated the end of Mr. White's and Ms. Armstrong's relationship, and they separated shortly thereafter.

Following the separation, Mr. White filed a pro se legitimation petition in the Davidson County Juvenile Court.[1] He waived his right to insist on genetic testing, and Ms. Armstrong did not contest his petition. Accordingly, on January 5, 1994, a juvenile court referee entered an order declaring Mr. White to be the father of Ms. Armstrong's older son. The order also directed Mr. White to pay Ms. Armstrong $4,847 in back child support, as well as $264 in prospective monthly child support.

For the next three years or so, Mr. White paid his child support and regularly exercised his visitation rights. By mid-1997, comments by Ms. Armstrong and the child prompted Mr. White to question whether he was the child's biological father. After the juvenile court refused to order genetic testing, Mr. White obtained the testing on his own, and the results of this test categorically excluded him as the child's biological father. In November 1997, he requested the juvenile court to terminate his support obligations. When the juvenile court declined to relieve him of this support obligation, Mr. White appealed to this court. We vacated the juvenile court's order and remanded the case with directions to grant Mr. White prospective relief from the January 5, 1994 legitimation order in accordance with Tenn. R. Civ. P. 60.02(4). *White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085 (Tenn. Ct. App. Jan. 27, 1999) (No Tenn. R. App. P. 11 application filed).

When the case returned to the juvenile court, the court entered an order on March 5, 1999, granting Mr. White relief from his child support obligation. On June 28, 1999, Mr. White filed a "motion for judgment for overpaid child support" requesting the juvenile court to order Ms. Armstrong and the State[2] to reimburse him for all the child support he had paid to Ms. Armstrong since January 5, 1994. The State opposed the motion primarily on the ground that it was not legally required to repay child support in cases where paternity has been voluntarily acknowledged. On September 2, 1999, the juvenile court entered an order denying Mr. White's motion to recoup any part of his child support payments from the State. Mr. White has now perfected this appeal.

# I.
## THE JUVENILE COURT'S SUBJECT MATTER JURISDICTION

The dispositive issue in this case is whether the General Assembly has given juvenile courts jurisdiction to award money judgments against the State of Tennessee to reimburse persons who have made voluntary support payments before discovering that they are not the supported child's biological parent. The juvenile court concluded that it lacked this jurisdiction. We have determined

---

[1] This petition was governed by the since-repealed legitimation statutes. Tenn. Code Ann. §§ 36-2-201, -210 (repealed 1997).

[2] Mr. White sought reimbursement from the State because, by operation of law, Ms. Armstrong and her son had assigned their child support rights to the State in exchange for public assistance under the federal Title IV-D program. *See generally Baker v. State ex rel. Baker*, No. 01A01-9509-CV-00428, 1997 WL 749452, at *3 (Tenn. Ct. App. Dec. 5, 1997) (No Tenn. R. App. P. 11 application filed) (discussing the assignment of child support rights under the Title IV-D program). As the assignee of Ms. Armstrong's child support rights, the State stands in Ms. Armstrong's shoes and is the real party interest in this dispute.

that the juvenile court's view of its jurisdiction was correct in light of both the inherent limitations on the jurisdiction of juvenile courts and the doctrine of sovereign immunity.

## A.
### THE JUVENILE COURT'S LIMITED SUBJECT MATTER JURISDICTION

The concept of subject matter jurisdiction implicates a court's authority to hear and decide a particular type of case. *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Cashion v. Robertson*, 955 S.W.2d 60, 63 (Tenn. Ct. App. 1997). Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from a legislative act, *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977), and thus they cannot exercise jurisdictional powers that have not been conferred on them directly or by necessary implication. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

Subject matter jurisdiction depends on the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). It does not depend upon the conduct or the agreement of the parties. *Shelby County v. City of Memphis*, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963). Thus, the parties cannot confer subject matter jurisdiction on a court by appearance, plea, consent, silence, or waiver. *Caton v. Pic-Walsh Freight Co.*, 211 Tenn. 334, 338, 364 S.W.2d 931, 933 (1963); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d at 480. Without subject matter jurisdiction, a court cannot enter valid, enforceable orders. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *Riden v. Snider*, 832 S.W.2d 341, 343 (Tenn. Ct. App. 1991).

The juvenile courts were unknown at common law. *State ex rel. Hyatt v. Bomar*, 210 Tenn. 249, 252, 358 S.W.2d 295, 296 (1962); *State v. Stout*, No. 89-331-II, 1990 WL 91143, at *3 (Tenn. Ct. App. July 5, 1990) (No Tenn. R. App. P. 11 application filed). They are entirely creatures of statute, and thus their subject matter jurisdiction is circumscribed by the statutes creating them. *West Tennessee Agape, Inc. v. Lipe*, 515 S.W.2d 648, 649 (Tenn. Ct. App. 1974). Unlike circuit or chancery courts, juvenile courts have special and limited jurisdiction, *Stambaugh v. Price*, 532 S.W.2d 929, 932 (Tenn. 1976); *Juvenile Court v. State ex rel. Humphrey*, 139 Tenn. 549, 555, 201 S.W. 771, 772 (1918), although they have full power to act within the jurisdiction they have been provided. *Cartwright v. Juvenile Court*, 172 Tenn. 626, 629, 113 S.W.2d 754, 756 (1938).

We must take care not to extend the subject matter jurisdiction of the juvenile courts beyond the jurisdiction conferred on them by the General Assembly. While the juvenile courts have broad statutory authority to establish a child's paternity[3] and to issue orders setting, modifying, or even terminating child support,[4] we find no statute giving the juvenile courts authority, expressly or by implication, to order the State to reimburse a person who has voluntarily paid child support based

---

[3] Tenn. Code Ann. § 37-1-103(a)(2) (Supp. 2000).

[4] Tenn. Code Ann. §§ 36-5-401, -701, -2101, 37-1-104(d) (1996 & Supp. 2000).

on the mistaken belief that he was the child's biological father. In the absence of statutory authority, the juvenile courts do not have subject matter jurisdiction over requests of this sort.

## B.
### SOVEREIGN IMMUNITY

Even if we were to hold that the power to order reimbursement of child support is somehow implicit in the power to order the payment of child support, a compelling constitutional barrier – the doctrine of sovereign immunity – prevents us from holding that the juvenile courts have the subject matter jurisdiction to adjudicate these claims against the State. The doctrine of sovereign immunity divests the courts of subject matter jurisdiction over suits against the state for money damages unless the State has consented to these suits. *Shell v. State*, 893 S.W.2d 416, 420 (Tenn. 1995); *Pool v. State*, 987 S.W.2d 566, 568 (Tenn. Ct. App. 1998). The State has not consented to being subjected to claims like the one Mr. White is pursuing here.

At common law, the doctrine of sovereign immunity provided an impenetrable barrier protecting state and local governments from suits for money damages. The original framers of our Constitution recognized that justice and good policy might require exceptions to this rule, *Hembree v. State*, No. 01A01-9306-BC-00279, 1995 WL 50066, at *2 (Tenn. Ct. App. Feb. 8, 1995), *aff'd*, 925 S.W.2d 513 (Tenn. 1996). Accordingly, they provided in Tenn. Const. art. I, § 17 that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Because Tenn. Const. art. I, § 17 is not self-executing, the General Assembly has the exclusive constitutional prerogative to establish the procedures for making monetary claims against the State. *General Oil Co. v. Crain*, 117 Tenn. 82, 89, 95 S.W. 824, 826 (1906); *Williams v. Register*, 3 Tenn. (1 Cooke) 213, 217 (1812).

The General Assembly eventually enacted Tenn. Code Ann. § 20-13-102(a) (1994) which flatly closed the doors of all state courts to suits intended to reach the state treasury. *Quinton v. Board of Claims*, 165 Tenn. 201, 217, 54 S.W.2d 953, 957-58 (1932). In the one hundred and twenty-seven years since enacting Tenn. Code Ann. § 20-13-102(a), the General Assembly has been extremely reluctant to wield its power under Tenn. Const. art. I, § 17. On only two occasions has it enacted a statute permitting the State to be sued for money damages in state court. First, in 1977, the General Assembly enacted statutes permitting suits against the State for breach of express or implied contracts.[5] The second occasion occurred in 1984 when the General Assembly created the

---

[5]Act of May 4, 1977, ch. 281, 1977 Tenn. Pub. Acts 652, codified at Tenn. Code Ann. §§ 29-10-101, -103 (repealed 1984). By 1989, the General Assembly had removed these claims from state courts and had placed them with the Tennessee Claims Commission and had narrowed the right to sue to apply only to actions for breach of a written contract between the claimant and the state. Tenn. Code Ann. § 9-8-307(a)(1)(L) (Supp. 2000); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 736 (Tenn. Ct. App. 1989).

Tennessee Claims Commission and vested the Commission with jurisdiction to adjudicate certain defined contract and tort claims against the State.[6]

Statutes permitting the State to be sued for money damages must be strictly construed because they are in derogation of the common law. *Hembree v. State*, 925 S.W.2d 513, 516 (Tenn. 1996); *Beare Co. v. Olsen*, 711 S.W.2d 603, 605 (Tenn. 1986); *Stokes v. University of Tennessee*, 737 S.W.2d 545, 546 (Tenn. Ct. App. 1987). Any statute purporting to waive the State's sovereign immunity must be "so plain, clear and unmistakable as to leave no room for doubt of the intention of the legislature." *Quinton v. Board of Claims*, 165 Tenn. at 214-15, 54 S.W.2d at 957; *Hise v. State*, 968 S.W.2d 852, 853 (Tenn. Ct. App. 1997). Thus, the courts may not presume that the General Assembly waived sovereign immunity any more than the express statutory language. *Daley v. State*, 869 S.W.2d 338, 340 (Tenn. Ct. App. 1993).

We have already concluded that the statutes creating the Tennessee Board of Claims and authorizing certain contract and tort claims against the State do not permit claims for reimbursement of child support payments. *Fossett v. State*, No. 02A01-9703-BC-00061, 1997 WL 714877, at *2 (Tenn. Ct. App. Nov. 18, 1997), *perm. app. denied* (Tenn. June 8, 1998). Mr. White has not cited this court to any statute or other authority permitting suits against the State to recover voluntarily paid child support, and our independent research has uncovered none. To the contrary, Tenn. Code Ann. § 36-5-101(n)(2) (Supp. 2000) specifically states that the State may not be sued "to compensate any person for repayment of child support paid . . . as a result of . . . the rescission of any orders of legitimation, paternity, or support."[7]

In the absence of any statute plainly and unmistakably permitting monetary claims such as the one Mr. White is pursuing in this case, and in light of Tenn. Code Ann. § 36-5-101(n)(2), we have concluded that the juvenile court correctly determined that it did not have subject matter jurisdiction to adjudicate Mr. White's claim against the State.[8]

---

[6]Act of May 24, 1984, ch. 972, 1984 Tenn. Pub. Acts 1026, codified at Tenn. Code Ann. §§ 9-8-301, -307 (1999 & Supp. 2000). This Act repealed the 1977 legislation permitting the filing of contract actions against the State.

[7]This statute was enacted in 1997, Act of May 30, 1997, ch. 551, § 41, 1997 Tenn. Pub. Acts. 1012, 1079-80, and is applicable to this proceeding.

[8]Our decision that Mr. White cannot pursue his claims against the State in juvenile court rests on the juvenile court's limited subject matter jurisdiction and the doctrine of sovereign immunity. Thus, our opinion should not be construed as preventing Mr. White from seeking reimbursement from other parties in a different forum. Biological parents have a joint and several obligation to support their minor children. Tenn. Code Ann. § 34-11-102(a) (1996); *Garey v. Garey*, 482 S.W.2d 133, 135 (Tenn. 1972); *Merrill v. Merrill*, 188 Tenn. 10, 12-13, 216 S.W.2d 705, 706 (1948). A father's duty to support his child is ordinarily not discharged when a third party contributes to the child's support. *Owen v. Watson*, 157 Tenn. 352, 356, 8 S.W.2d 484, 485 (1928). Thus, a third party who provides necessaries to a minor child may recover from the father. *Baker v. Baker*, 169 Tenn. 589, 592-93, 89 S.W.2d 763, 764 (1935); *Owen v. Watson*, 157 Tenn. at 356, 8 S.W.2d at 485. As the juvenile court pointed out, Mr. White may very well have a claim against the biological father of Ms. Armstrong's child if and when he is ever discovered.

## II.
### MR. WHITE'S FEDERAL CIVIL RIGHTS CLAIM

Mr. White also asserts that the State had been "unjustly enriched" by the child support payments that he made between January 1995 and March 1999. Accordingly, citing *Davis v. McClaran*, 909 S.W.2d 412 (Tenn. 1995), he insists that the juvenile court's refusal to consider his claim for reimbursement deprived him of federally protected rights in violation of 42 U.S.C.A. § 1983 (West 1994). We are at a loss to understand how *Davis v. McClaran* supports Mr. White's argument, but we need not dwell on this question because Mr. White did not assert a 42 U.S.C.A. § 1983 claim in the juvenile court. Claims not pursued in the trial court cannot be raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Chadwell v. Knox County*, 980 S.W.2d 378, 384 (Tenn. Ct. App. 1998).[9]

## III.

In light of our conclusion that the juvenile court did not have subject matter jurisdiction to adjudicate Mr. White's reimbursement claim, we pretermit his "taking" argument predicated on Tenn. Const. art. I, § 21. We affirm the dismissal of Mr. White's claim for reimbursement of the child support he paid prior to March 5, 1999, and remand the case to the juvenile court for whatever further proceedings may be required. We also tax the costs of this appeal to Daniel White and his surety for which execution, if necessary, may issue.

_____

WILLIAM C. KOCH, JR., JUDGE

---

[9]We note parenthetically that state courts unquestionably have jurisdiction to adjudicate 42 U.S.C.A. § 1983 claims, *Poling v. Goins*, 713 S.W.2d 305, 306 (Tenn. 1986), and that the doctrine of sovereign immunity is not a defense to civil rights actions when they are properly filed. *Howlett v. Rose*, 496 U.S. 356, 383, 110 S. Ct. 2430, 2447 (1990). However, juvenile courts are courts of limited jurisdiction, *Stambaugh v. Price*, 532 S.W.2d at 932, and we find no statute empowering juvenile courts to adjudicate 42 U.S.C.A. § 1983 claims. Thus, while these claims may be pursued in the circuit or chancery courts, they may not be pursued in the juvenile courts.